**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHANDLER LEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 1:26-cv-08888 |
| | ) | |
| HYATT HOTELS CORPORATION; HYATT CORPORATION d/b/a HYATT INCLUSIVE COLLECTION; and HYATT INTERNATIONAL CORPORATION, | ) | Hon. Joan H. Lefkow |
| | ) | |
| Defendants. | ) | |

**DECLARATION OF BRIAN FURGALUS IN SUPPORT OF HYATT DEFENDANTS' MOTION TO DISMISS**

I, Brian Furgalus, being duly sworn, deposes and states as follows:

1. I am Assistant Secretary to Hyatt Hotels Corporation ("HHC"), Hyatt Corporation ("HC") and Hyatt International Corporation ("HIC").

2. At all times relevant HHC was a Delaware corporation with its principal place of business in Illinois.

3. At all times relevant HC, incorrectly sued as Hyatt Corporation d/b/a Hyatt Inclusive Collection, was a Delaware corporation with its principal place of business in Illinois.

4. At all times relevant HIC was a Delaware corporation with its principal place of business in Illinois.

5. At all times relevant AMR Operaciones MX, S. de R.L. de C.V. was a Mexican entity with its principal place of business in Mexico.

6. At all times relevant AMResorts Marketing Panama, S. de R.L. was a Panamanian subsidiary doing business in Mexico.



**EXHIBIT**
**A**

7. At all times pertinent to this action, HHC, HC and HIC did not directly own the Resort nor did it operate, control, franchise, or manage the Resort, including day-to-day operations.

8. HHC, HC, incorrectly sued as Hyatt Corporation d/b/a Hyatt Inclusive Collection, and HIC are related and affiliated companies of AMR Operaciones MX, S. de R.L. de C.V.

9. HHC, HC and HIC have no involvement or responsibility over maintenance, design, operations, or decision-making that occurs at Secrets Puerto Los Cabos Golf & Spa Resort.

10. HHC, HC and HIC do not maintain, manage, or control the premises of Secrets Puerto Los Cabos Golf & Spa Resort.

11. HHC, HC and HIC do not provide maintenance on the premises of Secrets Puerto Los Cabos Golf & Spa Resort.

12. HHC, HC and HIC do not maintain, employ, or contract with any employees or workers at the Resort, including those that provide maintenance services. Further, such staff members do not report to HHC, HC and HIC regarding their job duties.

13. Other than being generally aware of the allegations in the Complaint, HHC, HC and HIC have no specific knowledge regarding the subject incident underlying this litigation.

14. On behalf of HHC, HC and HIC, I consent to the jurisdiction of the appropriate courts of Mexico.

FURTHER AFFIANT SAYETH NAUGHT.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

October 14, 2026_______________
DATE

Signed by:
426304814662436...
____________________
AFFIANT

## ACCOMMODATION SERVICE AGREEMENT / CONTRATO DE PRESTACIÓN DE SERVICIOS DE HOSPEDAJE

**1. PURPOSE.** This accommodation agreement regulates the provision of lodging services in the all-inclusive modality between the Hotel and the Guest, as well as his Registered Companions and Invitees, all of them identified on the back of the Registration Card, in accordance with the stated terms in the (a) Registration card; (b) The Hotel Services Directory (the "Directory"); (c) Hotel rules (the "Hotel Rules"), and (d) the applicable law (the "Law").
**2. DESCRIPTION OF SERVICES.** For the provision of accommodation services in the all-inclusive modality, the Hotel is bound to provide the Guest the number of rooms for the time set on the registration card, as well as to provide any other services included and described in the directory (jointly known as the "Contracted services"). It is the Guest's obligation to review the directory to learn all the contracted services (NOM-010-TUR-2001-IV).
**3. RATE.** For the provision of the Contracted services, the Guest is obliged to pay the daily rate per person established on the registration card. This rate includes all the quantities and concepts relating to the contracted services. Payment may be made in national currency (Mexican pesos) or foreign currency at the exchange rate published in the Federal Official Gazette of Mexico the day the payment is made, either in cash, debit or credit card or wire transfer. In case of paying with credit card, no additional fee applies. Fee per person per night will be charged upon the delivery of the Room at the agreed rate. Services that have an additional cost (the "Additional services") are listed in the directory (NOM-010-TUR - 2001/subsection IV).
**4. AUTHORIZATION OF CHARGES.** By signing the registration card, the Guest grants his irrevocable consent so the Hotel a) Charges any amount that should be collected arising from the contracted services, including all the amounts for services not included in the rate hired by the Guest (regardless if the services subject to charge have not been rendered), and b) Charges any amount owed by the Guest in compliance with his obligations, no matter if the charge is made after the date of departure. The Hotel will issue and deliver to the Guest the corresponding notes or invoices that support the charges made in accordance to the law.
**5. CHECK IN AND CHECK OUT OF THE HOTEL.** The room will be provided no later than 15:00 hrs. The time limit to vacate the room is at 12:00 hrs., the Guest is entitled to a tolerance period of sixty minutes from the checkout time to vacate the room. The Guest must pay an additional fee per person per room in case the Guest or any registered companion does not vacate the room at the designated time. In that case, the Guest may be charged a different rate than the one set in the registration card (NOM-010-TUR-2001).
**6. GUEST OBLIGATIONS.** The Guest is obliged to:
i. Pay the rate set on the Registration Card at the moment of check in and to pay for any incidentals or additional consumptions at the moment of check out.
ii. Guarantee the fulfillment of payment obligations assumed in this Agreement contract by means of a valid credit card, the subscription of a voucher or, where appropriate, by deposit or wire transfer to the Hotel's bank account.
iii. Read the hotel rules and comply with all the obligations under this Agreement, the Directory, the Hotel Rules and the Law;
iv. Inform immediately to the hotel and then report to the local authority any crime or situation out of the ordinary of which the Guest has been a victim and/or witness.
v. Explain to its registered companions and invitees and monitor compliance of all the obligations established in this agreement, hotel rules, the directory and the law;
vi. Be constituted as co-obligor pursuant to applicable law regarding any breach or damage by its registered companions and invitees.
**7. HOTEL OBLIGATIONS.** The Hotel is obliged to:
i. Provide the contracted services stated in this Agreement, the Registration Card, the Directory, the Hotel Rules and the Law;
ii. Recognize and accept the booking slip that the Guest displays when entering the Hotel, provided that it has a confirmation key and has been issued by a valid and legally existing travel agency or broker.
iii. Provide the Guest with the necessary information requested in relation to the Hotel, the contracted services, restrictions and admission conditions.
iv. To report to the applicable authority any event that infringes, trespasses or could contravene the law
**8. HOTEL'S RULES.** The use of the Hotel's facilities is subject to the rules located inside the room assigned to the Guest. The Hotel hereby informs the Guest that the rules contain dispositions of legal importance, the knowledge of which is indispensable so that he/she is able to make decisions regarding the activities he/she decides to undertake.
**9. TERMINATION.** Any breach to the terms or conditions of this Agreement, the Directory, the Hotel Rules and the Law is cause of termination.
In case that the cause of breach by the Guest attempts to the life, safety or integrity of other guests, employees or hotel facilities, the Hotel may ask the Guest to leave with the support of local authorities. In case of termination for non-compliance by the Guest, he or she is obliged to pay all the services contracted (without any deduction)
In case of termination for non-compliance by the Hotel, it will refund the Guest the amount of money equivalent to the contracted services paid and not used by the Guest. (NOM-010-TUR-2001-Section 5.2.4).
**10. RESPONSIBILITY RELEASE.** By signing this Agreement, the Guest releases without reservation or action or legal right the Hotel (including but not limited to, its legal representatives, directors and managers, employees, officials, shareholders, holding companies, operators, controllers and/or stock owners and/or subsidiaries and/or affiliate companies) of all liability, complaint, claim, loss, accident, disagreement or adverse situation that may arise from any of the following: **a.** For the use of the room, balcony, all kinds of swimming pools, jacuzzies, hallways and other common areas. **b.** For the use of beach and sea, which are federal public area. **c.** For any action or activity of his invitees that causes damage or alters the comfort of Hotel Guests. **d.** By the excessive consumption of alcohol as laid down in the Hotel Rules. **e.** For the services provided by third parties.
**11. PRIVACY POLICY.** The Guest, their Registered Companions and Invitees (if any) acknowledge that they have been provided with the Hotel's Privacy Policy and that they may be video recorded by the Hotel's closed-circuit cameras for security and surveillance purposes, so through the subscription of the registration card grant their broadest consent so that their non-sensitive Personal Data is used in terms of the information in the hotel's privacy policy, which can be consulted on the hotel's website https://www.hyatt.com/en-US/info/privacy-policy.
**12. ENGLISH AND SPANISH VERSIONS.** This Agreement, the Registration Card, the Directory and the Hotel Rules are in English and Spanish language. In case of any conflict in the interpretation between the English and the Spanish version, the Spanish version will prevail. The Hotel is responsible for any differences that may exist between the two versions. (NOM-010-TUR-2001).
**13. CIVIL LIABILITY INSURANCE.** The Hotel has contracted a liability insurance that covers damages to third parties, persons and properties, and whose amount is based on the number of rooms it has, in accordance with the Law. (NOM-07-TUR-2002).
**14. JURISDICTION AND APPLICABLE LAW.** On behalf of myself and any other person accompanying me, I agree that any claim I may have against the Hotel Owner, Hotel Manager, Hotel Franchisor, Hotel Marketer, or Hotel Licensor, along with their respective parents, subsidiaries, related, and affiliated companies at every tier, and their respective officers, directors, employees, agents, representatives, successors and assigns of each of the above (together, the "Hotel"), arising from or relating to any events occurring during my stay in Mexico shall be governed by and construed in accordance with the laws of Mexico and further, irrevocably agree to the Judiciary of Mexico as the exclusive venue for any proceedings whatsoever relating to any such claim. On behalf of myself and any other person accompanying me, I expressly waive any right to challenge jurisdiction or venue in such courts due to my current or future place of residence or nationality. On behalf of myself and any other person accompanying me, I understand and agree that this provision shall supersede and control over any contrary provision in any agreement between myself (or any other person accompanying me) and the Hotel, with respect to any dispute arising out of my or their stay at the Hotel, including but not limited to personal injury or wrongful death claims.

**1. OBJETO.** El presente Contrato de Hospedaje regula la prestación de servicios de hospedaje en la modalidad todo incluido entre el Hotel y el Huésped, así como sus Acompañantes Registrados e invitados, todos ellos identificados en la Tarjeta de Registro al reverso, de conformidad con los términos establecidos en dicha (a) Tarjeta de Registro; (b) el Directorio de Servicios del Hotel (el "Directorio"); (c) el Reglamento Interno del Hotel (el "Reglamento"), y (d) la legislación aplicable (la "Ley").
**2. DESCRIPCIÓN DE LOS SERVICIOS.** Por la prestación de los servicios de hospedaje en la modalidad todo incluido, el Hotel se obliga a poner a disposición del Huésped el número de habitaciones y por el tiempo establecido en la Tarjeta de Registro, así como a prestar los demás servicios incluidos y que se describen en el Directorio (conjuntamente los "Servicios Contratados"). Es obligación del Huésped revisar el Directorio con la finalidad de conocer la totalidad de los Servicios Contratados (NOM-010-TUR-2001-IV).
**3. TARIFA.** Por la prestación de los Servicios Contratados, el Huésped está obligado a pagar la tarifa diaria por persona establecida en la Tarjeta de Registro. Dicha tarifa contempla todas las cantidades y conceptos referentes a los Servicios Contratados. El pago de la tarifa podrá realizarse en moneda nacional o en moneda extranjera al tipo de cambio publicado en el Diario Oficial de la Federación al día en que se efectúe el pago, ya sea mediante efectivo, tarjeta de débito o crédito o transferencia bancaria. En caso de pago con tarjeta de crédito no aplica cargo adicional alguno. El cobro de la tarifa por noche por persona se genera a partir de la entrega de la Habitación y al monto convenido. Los servicios y consumos que tienen un costo adicional (los "Servicios Adicionales") se encuentran señalados en el Directorio (NOM-010-TUR-2001/INCISO IV).
**4. AUTORIZACIÓN DE CARGOS.** Mediante la firma de la Tarjeta de Registro, el Huésped otorga su consentimiento irrevocable al Hotel para que (a) realice el cobro de cualquier cantidad que deba ser cobrada relacionada con la prestación de los Servicios Contratados, incluyendo aquellas cantidades por servicios no incluidos en la tarifa contratada por el Huésped (sin importar si los servicios objeto de cobro no hayan sido prestados), y (b) cualquier cantidad que adeude al Hotel en cumplimiento a sus obligaciones, sin importar si el cargo se realiza posterior a la fecha de salida del Huésped del Hotel. El Hotel emitirá y entregará al Huésped las notas o facturas correspondientes que amparen los cobros realizados de conformidad a lo establecido en la Ley.
**5. HORA DE ENTRADA Y SALIDA DEL HOTEL.** La Habitación se proporcionará a más tardar a las 15:00horas. La hora límite para desalojar la Habitación es a las 12:00 horas, contando el Huésped con un periodo de tolerancia de sesenta minutos a partir de la hora de salida para desalojar la Habitación. El Huésped está obligado a pagar una tarifa por persona adicional por habitación que no desocupe éste o sus Acompañantes Registrados en el horario señalado. En ese caso, es posible que el Hotel cobre al Huésped una tarifa distinta a la señalada en la Tarjeta de Registro (NOM-010-TUR-2001).
**6. OBLIGACIONES DEL HUÉSPED.** El Huésped está obligado a:
i. Pagar la Tarifa establecida en la Tarjeta de Registro al momento de registrar su entrada y a hacer el pago correspondiente a cualquier consumo adicional, en caso de existir, al momento de registrar su salida.
ii. Garantizar el cumplimiento de las obligaciones de pago asumidas en este Contrato mediante una tarjeta de crédito válida, así como la suscripción del voucher correspondiente o, en su caso, mediante depósito o transferencia a la cuenta bancaria del Hotel.
iii. Leer el Reglamento y cumplir con todas las obligaciones a su cargo establecidas en este Contrato, el Directorio, el Reglamento y la Ley;
iv. Informar de inmediato al Hotel y posteriormente denunciar ante la autoridad competente cualquier delito o situación fuera de lo ordinario del que sea víctima o testigo.
v. Explicar y vigilar el cumplimiento de las obligaciones a cargo de sus Acompañantes Registrados e Invitados contenidos en este Contrato, el Reglamento, el Directorio y la Ley;
vi. Constituirse como obligado solidario en términos de la legislación aplicable respecto de cualquier incumplimiento o daño por parte de sus Acompañantes Registrados e Invitados.
**7. OBLIGACIONES DEL HOTEL.** El Hotel está obligado a:
i. Prestar los Servicios Contratados en términos de lo establecido en este Contrato, la Tarjeta de Registro, el Directorio, el Reglamento y la Ley;
ii. Reconocer y aceptar la papeleta de reservación que exhiba el Huésped al ingresar al Hotel, siempre y cuando cuente con clave de confirmación y haya sido emitida por una agencia de viajes o intermediario válido y legalmente existente.
... necesaria que éste le solicite en relación al Hotel, los Servicios Contratados, restricciones, y condiciones de admisión.
... la Ley.
... el Reglamento ubicado en el interior de la Habitación asignada al Huésped. Mediante el presente, ...iento es indispensable para que se encuentre en aptitud de tomar decisiones respecto de las

...el Directorio, el Reglamento y la Ley. En caso que el evento de incumplimiento por parte del ... el Hotel podrá proceder al desalojo del Huésped con el auxilio de las autoridades competentes. ... los Servicios Contratados (sin deducción alguna). En caso de rescisión por incumplimiento por ...pagados y no utilizados por el Huésped (NOM-010-TUR-2001 - Sección 5.2.4).
...e acción o derecho legal alguno al Hotel (incluyendo de manera enunciativa más no limitativa, ...etarias, operadoras, controladoras y/o tenedoras de acciones y/o subsidiarias y/o filiales) de ...a derivarse de cualquiera de las siguientes causas: **a.** Por el uso de la habitación, balcón, toda ...rea pública federal. **c.** Por cualquier acción o actividad de sus invitados que ocasione daños ...establecido en el Reglamento. **e.** Por los servicios prestados por terceros.
...econocen que se les ha facilitado el Aviso de Privacidad del Hotel y que podrán ser video ...ediante la suscripción de la Tarjeta de Registro otorgan su más amplio consentimiento para ... Privacidad del Hotel, el cual podrá ser consultado en la página de internet del Hotel

...nto constan en idioma inglés y en español. En caso de cualquier conflicto en la interpretación ...ble de cualquier diferencia que pudiera existir entre ambas versiones. (NOM-010-TUR-2001). ...ad civil que cubre daños a terceros en sus bienes y personas y cuyo monto está basado en ...002).
...mpañe, acepto que cualquier demanda que pueda tener en contra del Propietario del Hotel, ...junto con sus respectivas entidades matrices, subsidiarias, vinculadas y filiales a cualquier nivel, ...rios de cada uno de los anteriores (en conjunto, el "Hotel"), que surja de o en relación con ...as leyes de México; y, además, acepto de forma irrevocable el Poder Judicial de México como ...ombre y en el de cualquier otra persona que me acompañe, renuncio de forma expresa a ...encia o nacionalidad actual o futuro. En mi nombre y en el de cualquier otra persona que me acompañe, comprendo y acepto que esta disposición reemplazará y tendrá prioridad sobre cualquier disposición contraria en cualquier acuerdo celebrado entre el Hotel y yo (o cualquier otra persona que me acompañe), respecto a cualquier disputa que surja de mi estadía o la estadía de dicha persona en el Hotel, lo que incluye, entre otras, demandas por lesiones personales o muerte por homicidio culposo.



GUEST NAME AND SIGNATURE
NOMBRE Y FIRMA DEL HUÉSPED

GUEST NAME AND SIGNATURE
NOMBRE Y FIRMA DEL HUÉSPED

GUEST NAME AND SIGNATURE
NOMBRE Y FIRMA DEL HUÉSPED

GUEST NAME AND SIGNATURE
NOMBRE Y FIRMA DEL HUÉSPED

EXHIBIT B

# ACCOMMODATION SERVICE AGREEMENT / CONTRATO DE PRESTACIÓN DE SERVICIOS DE HOSPEDAJE

**1. PURPOSE.** This accommodation agreement regulates the provision of lodging services in the all-inclusive modality between the Hotel and the Guest, as well as his Registered Companions and Invitees, all of them identified on the back of the Registration Card, in accordance with the stated terms in the (a) Registration card; (b) The Hotel Services Directory (the "Directory"); (c) Hotel rules (the "Hotel Rules"), and (d) the applicable law (the "Law").

**2. DESCRIPTION OF SERVICES.** For the provision of accommodation services in the all-inclusive modality, the Hotel is bound to provide the Guest the number of rooms for the time set on the registration card, as well as to provide any other services included and described in the directory (jointly known as the "Contracted services"). It is the Guest's obligation to review the directory to learn all the contracted services (NOM-010-TUR-2001-IV).

**3. RATE.** For the provision of the Contracted services, the Guest is obliged to pay the daily rate per person established on the registration card. This rate includes all the quantities and concepts relating to the contracted services. Payment may be made in national currency (Mexican pesos) or foreign currency at the exchange rate published in the Federal Official Gazette of Mexico the day the payment is made, either in cash, debit or credit card or wire transfer. In case of paying with credit card, no additional fee applies. Fee per person per night will be charged upon the delivery of the Room at the agreed rate. Services that have an additional cost (the "Additional services") are listed in the directory (NOM-010-TUR - 2001/subsection IV).

**4. AUTHORIZATION OF CHARGES.** By signing the registration card, the Guest grants his irrevocable consent so the Hotel a) Charges any amount that should be collected arising from the contracted services, including all the amounts for services not included in the rate hired by the Guest (regardless if the services subject to charge have not been rendered), and b) Charges any amount owed by the Guest in compliance with his obligations, no matter if the charge is made after the date of departure. The Hotel will issue and deliver to the Guest the corresponding notes or invoices that support the charges made in accordance to the law.

**5. CHECK IN AND CHECK OUT OF THE HOTEL.** The room will be provided no later than 15:00 hrs. The time limit to vacate the room is at 12:00 hrs., the Guest is entitled to a tolerance period of sixty minutes from the checkout time to vacate the room. The Guest must pay an additional fee per person per room in case the Guest or any registered companion does not vacate the room at the designated time. In that case, the Guest may be charged a different rate than the one set in the registration card (NOM-010-TUR-2001).

**6. GUEST OBLIGATIONS.** The Guest is obliged to:

i. Pay the rate set on the Registration Card at the moment of check in and to pay for any incidentals or additional consumptions at the moment of check out.
ii. Guarantee the fulfillment of payment obligations assumed in this Agreement contract by means of a valid credit card, the subscription of a voucher or, where appropriate, by deposit or wire transfer to the Hotel's bank account.
iii. Read the hotel rules and comply with all the obligations under this Agreement, the Directory, the Hotel Rules and the Law;
iv. Inform immediately to the hotel and then report to the local authority any crime or situation out of the ordinary of which the Guest has been a victim and/or witness.
v. Explain to its registered companions and invitees and monitor compliance of all the obligations established in this agreement, hotel rules, the directory and the law;
vi. Be constituted as co-obligor pursuant to applicable law regarding any breach or damage by its registered companions and invitees.

**7. HOTEL OBLIGATIONS.** The Hotel is obliged to:

i. Provide the contracted services stated in this Agreement, the Registration Card, the Directory, the Hotel Rules and the Law;
ii. Recognize and accept the booking slip that the Guest displays when entering the Hotel, provided that it has a confirmation key and has been issued by a valid and legally existing travel agency or broker.
iii. Provide the Guest with the necessary information requested in relation to the Hotel, the contracted services, restrictions and admission conditions.
iv. To report to the applicable authority any event that infringes, trespasses or could contravene the law

**8. HOTEL'S RULES.** The use of the Hotel's facilities is subject to the rules located inside the room assigned to the Guest. The Hotel hereby informs the Guest that the rules contain dispositions of legal importance, the knowledge of which is indispensable so that he/she is able to make decisions regarding the activities he/she decides to undertake.

**9. TERMINATION.** Any breach to the terms or conditions of this Agreement, the Directory, the Hotel Rules and the Law is cause of termination.
In case that the cause of breach by the Guest attempts to the life, safety or integrity of other guests, employees or hotel facilities, the Hotel may ask the Guest to leave with the support of local authorities. In case of termination for non-compliance by the Guest, he or she is obliged to pay all the services contracted (without any deduction)
In case of termination for non-compliance by the Hotel, it will refund the Guest the amount of money equivalent to the contracted services paid and not used by the Guest. (NOM-010-TUR-2001-Section 5.2.4).

**10. RESPONSIBILITY RELEASE.** By signing this Agreement, the Guest releases without reservation or action or legal right the Hotel (including, but not limited to, its legal representatives, directors and managers, employees, officials, shareholders, holding companies, operators, controllers and/or stock owners and/or subsidiaries and/or affiliate companies) of all liability, complaint, claim, loss, accident, disagreement or adverse situation that may arise from any of the following: **a.** For the use of the room, balcony, all kinds of swimming pools, jacuzzies, hallways and other common areas. **b.** For the use of beach and sea, which are federal public area. **c.** For any action or activity of his invitees that causes damage or alters the comfort of Hotel Guests. **d.** By the excessive consumption of alcohol as laid down in the Hotel Rules. **e.** For the services provided by third parties.

**11. PRIVACY POLICY.** The Guest, their Registered Companions and Invitees (if any) acknowledge that they have been provided with the Hotel's Privacy Policy and that they may be video recorded by the Hotel's closed-circuit cameras for security and surveillance purposes, so through the subscription of the registration card grant their broadest consent so that their non-sensitive Personal Data is used in terms of the information in the hotel's privacy policy, which can be consulted on the hotel's website https://www.hyatt.com/en-US/info/privacy-policy.

**12. ENGLISH AND SPANISH VERSIONS.** This Agreement, the Registration Card, the Directory and the Hotel Rules are in English and Spanish language. In case of any conflict in the interpretation between the English and the Spanish version, the Spanish version will prevail. The Hotel is responsible for any differences that may exist between the two versions. (NOM-010-TUR-2001).

**13. CIVIL LIABILITY INSURANCE.** The Hotel has contracted a liability insurance that covers damages to third parties, persons and properties, and whose amount is based on the number of rooms it has, in accordance with the Law. (NOM-07-TUR-2002).

**14. JURISDICTION AND APPLICABLE LAW.** On behalf of myself and any other person accompanying me, I agree that any claim I may have against the Hotel Owner, Hotel Manager, Hotel Franchisor, Hotel Marketer, or Hotel Licensor, along with their respective parents, subsidiaries, related, and affiliated companies at every tier, and their respective officers, directors, employees, agents, representatives, successors and assigns of each of the above (together, the "Hotel"), arising from or relating to any events occurring during my stay in Mexico shall be governed by and construed in accordance with the laws of Mexico and further, irrevocably agree to the Judiciary of Mexico as the exclusive venue for any proceedings whatsoever relating to any such claim. On behalf of myself and any other person accompanying me, I expressly waive any right to challenge jurisdiction or venue in such courts due to my current or future place of residence or nationality. On behalf of myself and any other person accompanying me, I understand and agree that this provision shall supersede and control over any contrary provision in any agreement between myself (or any other person accompanying me) and the Hotel, with respect to any dispute arising out of my or their stay at the Hotel, including but not limited to personal injury or wrongful death claims.

**1. OBJETO.** El presente Contrato de Hospedaje regula la prestación de servicios de hospedaje en la modalidad todo incluido entre el Hotel y el Huésped, así como sus Acompañantes Registrados e invitados, todos ellos identificados en la Tarjeta de Registro al reverso, de conformidad con los términos establecidos en dicha (a) Tarjeta de Registro; (b) el Directorio de Servicios del Hotel (el "Directorio"); (c) el Reglamento Interno del Hotel (el "Reglamento"), y (d) la legislación aplicable (la "Ley").

**2. DESCRIPCIÓN DE LOS SERVICIOS.** Por la prestación de los servicios de hospedaje en la modalidad todo incluido, el Hotel se obliga a poner a disposición del Huésped el número de habitaciones y por el tiempo establecido en la Tarjeta de Registro, así como a prestar los demás servicios incluidos y que se describen en el Directorio (conjuntamente los "Servicios Contratados"). Es obligación del Huésped revisar el Directorio con la finalidad de conocer la totalidad de los Servicios Contratados (NOM-010-TUR-2001-IV).

**3. TARIFA.** Por la prestación de los Servicios Contratados, el Huésped está obligado a pagar la tarifa diaria por persona establecida en la Tarjeta de Registro. Dicha tarifa contempla todas las cantidades y conceptos referentes a los Servicios Contratados. El pago de la tarifa podrá realizarse en moneda nacional o en moneda extranjera al tipo de cambio publicado en el Diario Oficial de la Federación al día en que se efectúe el pago, ya sea mediante efectivo, tarjeta de débito o crédito o transferencia bancaria. En caso de pago con tarjeta de crédito no aplica cargo adicional alguno. El cobro de la tarifa por noche por persona se genera a partir de la entrega de la Habitación y al monto convenido. Los servicios y consumos que tienen un costo adicional (los "Servicios Adicionales") se encuentran señalados en el Directorio (NOM-010-TUR-2001/INCISO IV).

**4. AUTORIZACIÓN DE CARGOS.** Mediante la firma de la Tarjeta de Registro, el Huésped otorga su consentimiento irrevocable al Hotel para que (a) realice el cobro de cualquier cantidad que deba ser cobrada relacionada con la prestación de los Servicios Contratados, incluyendo aquellas cantidades por servicios no incluidos en la tarifa contratada por el Huésped (sin importar si los servicios objeto de cobro no hayan sido prestados), y (b) cualquier cantidad que adeude al Hotel en cumplimiento a sus obligaciones, sin importar si el cargo se realiza posterior a la fecha de salida del Huésped del Hotel. El Hotel emitirá y entregará al Huésped las notas o facturas correspondientes que amparen los cobros realizados de conformidad a lo establecido en la Ley.

**5. HORA DE ENTRADA Y SALIDA DEL HOTEL.** La Habitación se proporcionará a más tardar a las15:00horas. La hora límite para desalojar la Habitación es a las 12:00 horas, contando el Huésped con un periodo de tolerancia de sesenta minutos a partir de la hora de salida para desalojar la Habitación. El Huésped está obligado a pagar una tarifa por persona adicional por habitación que no desocupe éste o sus Acompañantes Registrados en el horario señalado. En ese caso, es posible que el Hotel cobre al Huésped una tarifa distinta a la señalada en la Tarjeta de Registro (NOM-010-TUR-2001).

**6. OBLIGACIONES DEL HUÉSPED.** El Huésped está obligado a:

i. Pagar la Tarifa establecida en la Tarjeta de Registro al momento de registrar su entrada y a hacer el pago correspondiente a cualquier consumo adicional, en caso de existir, al momento de registrar su salida.
ii. Garantizar el cumplimiento de las obligaciones de pago asumidas en este Contrato mediante una tarjeta de crédito válida, así como la suscripción del voucher correspondiente o, en su caso, mediante depósito o transferencia a la cuenta bancaria del Hotel.
iii. Leer el Reglamento y cumplir con todas las obligaciones a su cargo establecidas en este Contrato, el Directorio, el Reglamento y la Ley;
iv. Informar de inmediato al Hotel y posteriormente denunciar ante la autoridad competente cualquier delito o situación fuera de lo ordinario del que sea víctima o testigo.
v. Explicar y vigilar el cumplimiento de las obligaciones a cargo de sus Acompañantes Registrados e Invitados contenidos en este Contrato, el Reglamento, el Directorio y la Ley;
vi. Constituirse como obligado solidario en términos de la legislación aplicable respecto de cualquier incumplimiento o daño por parte de sus Acompañantes Registrados e Invitados.

**7. OBLIGACIONES DEL HOTEL.** El Hotel está obligado a:

i. Prestar los Servicios Contratados en términos de lo establecido en este Contrato, la Tarjeta de Registro, el Directorio, el Reglamento y la Ley;
ii. Reconocer y aceptar la papeleta de reservación que exhiba el Huésped al ingresar al Hotel, siempre y cuando cuente con clave de confirmación y haya sido emitida por una agencia de viajes o intermediario válido y legalmente existente.
iii. Proporcionar al Huésped la información necesaria que éste le solicite en relación al Hotel, los Servicios Contratados, restricciones, y condiciones de admisión.
iv. Denunciar ante la autoridad competente cualquier evento que contravenga o pudiera contravenir la Ley.

**8. REGLAMENTO INTERNO DEL HOTEL.** El uso de las instalaciones del Hotel está sujeto a lo establecido en el Reglamento ubicado en el interior de la Habitación asignada al Huésped. Mediante el presente, el Hotel informa al Huésped que el Reglamento contiene disposiciones de importancia legal, cuyo conocimiento es indispensable para que se encuentre en aptitud de tomar decisiones respecto de las actividades que decida realizar.

**9. RESCISIÓN.** Es causa de rescisión cualquier incumplimiento a lo establecido en el presente Contrato, el Directorio, el Reglamento y la Ley. En caso que el evento de incumplimiento por parte del Huésped atente contra la vida, seguridad o integridad de los huéspedes, empleados e instalaciones del Hotel, el Hotel podrá proceder al desalojo del Huésped con el auxilio de las autoridades competentes. En caso de rescisión por incumplimiento por parte del Huésped, este estará obligado a pagar la totalidad de los Servicios Contratados (sin deducción alguna). En caso de rescisión por incumplimiento por parte del Hotel, este rembolsará al Huésped la cantidad de dinero equivalente a los Servicios Contratados pagados y no utilizados por el Huésped (NOM-010-TUR-2001- Sección 5.2.4).

**10. DESLINDE DE RESPONSABILIDAD.** Mediante la firma del presente, el Huésped libera sin reserva de acción o derecho legal alguno al Hotel (incluyendo de manera enunciativa más no limitativa, sus representantes legales, directores y gerentes, empleados, funcionarios, accionistas, sociedades propietarias, operadoras, controladoras y/o tenedoras de acciones y/o subsidiarias y/o filiales) de toda responsabilidad, queja, demanda, siniestro, accidente, inconformidad o situación adversa que pudiera derivarse de cualquiera de las siguientes causas: **a.** Por el uso de la habitación, balcón, toda clase de piscinas, jacuzzis, pasillos y demás áreas comunes. **b.** Por el uso de playa y mar, las cuales son área pública federal. **c.** Por cualquier acción o actividad de sus invitados que ocasione daños o altere la comodidad de los huéspedes del Hotel. **d.** Por el consumo excesivo de alcohol conforme lo establecido en el Reglamento. **e.** Por los servicios prestados por terceros.

**11. AVISO DE PRIVACIDAD.** El Huésped, sus Acompañantes Registrados e Invitados (en su caso) reconocen que se les ha facilitado el Aviso de Privacidad del Hotel y que podrán ser video grabados por las cámaras de circuito cerrado del Hotel con fines de seguridad y vigilancia, por lo que mediante la suscripción de la Tarjeta de Registro otorgan su más amplio consentimiento para que sus Datos Personales no sensibles, sean utilizados en términos de lo señalado en el Aviso de Privacidad del Hotel, el cual podrá ser consultado en la página de internet del Hotel https://www.hyatt.com/en-US/info/privacy-policy

**12. VERSIONES INGLÉS & ESPAÑOL.** Este Contrato, la Tarjeta de Registro, el Directorio y el Reglamento constan en idioma inglés y en español. En caso de cualquier conflicto en la interpretación entre la versión en inglés y la versión en español, la versión en español prevalecerá. El Hotel es responsable de cualquier diferencia que pudiera existir entre ambas versiones. (NOM-010-TUR-2001).

**13. SEGURO DE RESPONSABILIDAD CIVIL.** El Hotel tiene contratado un seguro de responsabilidad civil que cubre daños a terceros en sus bienes y personas y cuyo monto está basado en función del número de habitaciones con que se cuenta, de conformidad con la Ley. (NOM-07-TUR-2002).

**14. JURISDICCIÓN Y LEY APLICABLE.** En mi nombre y en el de cualquier otra persona que me acompañe, acepto que cualquier demanda que pueda tener en contra del Propietario del Hotel, el Gerente del Hotel, el Franquiciante del Hotel, el Comercializador del Hotel o el Licenciante del Hotel, junto con sus respectivas entidades matrices, subsidiarias, vinculadas y filiales a cualquier nivel, así como los respectivos ejecutivos, directores, empleados, agentes, representantes, sucesores y cesionarios de cada uno de los anteriores (en conjunto, el "Hotel"), que surja de o en relación con cualquier hecho que ocurra durante mi estadía en México se regirá e interpretará de conformidad con las leyes de México; y, además, acepto de forma irrevocable el Poder Judicial de México como el ente exclusivo para llevar a cabo cualquier procedimiento en relación con dicha demanda. En mi nombre y en el de cualquier otra persona que me acompañe, renuncio de forma expresa a cualquier derecho a objetar la competencia o jurisdicción de dichos tribunales debido a mi lugar de residencia o nacionalidad actual o futuro. En mi nombre y en el de cualquier otra persona que me acompañe, comprendo y acepto que esta disposición reemplazará y tendrá prioridad sobre cualquier disposición contraria en cualquier acuerdo celebrado entre el Hotel y yo (o cualquier otra persona que me acompañe), respecto a cualquier disputa que surja de mi estadía o la estadía de dicha persona en el Hotel, lo que incluye, entre otras, demandas por lesiones personales o muerte por homicidio culposo.

| GUEST NAME AND SIGNATURE<br>NOMBRE Y FIRMA DEL HUÉSPED | GUEST NAME AND SIGNATURE<br>NOMBRE Y FIRMA DEL HUÉSPED | GUEST NAME AND SIGNATURE<br>NOMBRE Y FIRMA DEL HUÉSPED | GUEST NAME AND SIGNATURE<br>NOMBRE Y FIRMA DEL HUÉSPED |
|---|---|---|---|

EXHIBIT
C

Exhibit D

Resort Agreements (to be filed under seal as confidential upon entry of protective order)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHANDLER LEE,<br><br>Plaintiff,<br><br>v.<br><br>HYATT HOTELS CORPORATION, HYATT CORPORATION d/b/a HYATT INCLUSIVE COLLECTION, and HYATT INTERNATIONAL CORPORATION,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 1:26-cv-08888 |

**DECLARATION OF DAVID LOPEZ**

I, DAVID LOPEZ, declare, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

## I. Introduction

1.1 My name is David Lopez. I am over eighteen years of age. I am duly licensed to practice law in the states of Texas and California and am a partner with the U.S.-Mexico law firm of Cacheaux, Cavazos & Newton, LLP, which has three offices in Texas and eight offices in Mexico. A true and correct copy of my curriculum vitae describing my employment and educational background is attached hereto as **Exhibit 1**.

1.2 The Mexican legal system is the central focus of my scholarly and research interests. Beginning in January 1994, I taught law school courses involving various aspects of the Mexican legal system, including North American Legal Systems (Comparative Law: U.S., Mexico, and Canada) and the North American Free Trade Agreement (NAFTA). I wrote the chapter on "The Legal System of Mexico" that appeared in William Hein & Co.'s 20-volume Modern Legal Systems Cyclopedia in 2000. I also wrote the brief chapter on "Mexico's Legal System" that appeared in 2002 in Transnational Publisher's Doing Business in Mexico series. In 2004, the treatise titled Mexican Law that I co-authored was published by Oxford University Press. My co-authors are a retired Justice of the Supreme Court of Mexico, two professors at one of Mexico's top law schools (ITAM) and the former Dean of the University of Houston Law Center. In connection with this work, I have, during the past twenty-nine years, conducted intensive research into the structure and operation of Mexico's legal system at the national and state levels.



**EXHIBIT**
**E**

1.3 I have taught and lectured in Mexico on matters of U.S. and Mexican law. From 1996 to 2000, I served as a visiting professor at the Universidad Autónoma de Guadalajara in connection with Baylor Law School's Study Abroad Program. I have delivered lectures on various occasions to Mexican judges, lawyers, and law students in Mexico City, Guadalajara, Monterrey and Veracruz, Mexico, and Austin and San Antonio, Texas.

For over twenty years, I have been involved in an international law practice representing Mexican clients in lawsuits pending in the United States and in international arbitration involving issues of Mexican substantive and procedural law and representing U.S. businesses and individuals on matters relating to Mexican law. Since 2017, I have served as Head of International Litigation for my U.S.-Mexico law firm.

From July 2022 to June 2024, I served as President of the American Academy of Mexican Law Experts ("AAMLE"), a professional organization that I co-founded. One of AAMLE's missions is to raise ethical standards among Mexican law experts and, to that end, our members crafted and pledge to follow a Code of Ethics. The Code's tenets are loyalty to the truth, duty to the court, independence, integrity and professionalism.

1.4 From 1997 to 2026, I have served as a testifying expert on Mexican law in over 210 cases around the country, not including this case. This has included cases in the United States Court of Appeals for the Fifth Circuit and United States District Courts for the:

- Southern District of Alabama,
- District of Arizona,
- Central District of California,
- Northern District of California,
- Southern District of California,
- District of Colorado,
- District of Connecticut,
- District of Idaho,
- Northern District of Illinois,
- Eastern District of Louisiana,
- Eastern District of Michigan,
- Western District of Michigan,
- District of Nevada,
- District of New Jersey,
- Eastern District of New York,
- Southern District of New York,
- Western District of New York,
- Northern District of Oklahoma,
- Eastern District of Pennsylvania,
- Northern District of Texas,
- Southern District of Texas (Corpus Christi, Galveston, Houston, Laredo, McAllen and Victoria Divisions),
- Western District of Texas (Del Rio, El Paso, Midland-Odessa, Pecos and San Antonio Divisions), and

- Western District of Washington.

I have testified as an expert on Mexican law in state courts and arbitral proceedings in:

- Arizona,
- California,
- Colorado,
- Delaware,
- Florida,
- Georgia,
- Illinois,
- Iowa,
- Massachusetts,
- Minnesota,
- New Mexico,
- New York,
- Oklahoma,
- Pennsylvania, and
- Texas (Aransas, Bexar, Brazos, Cameron, Dallas, El Paso, Harris, Hidalgo, Hill, Jefferson, LaSalle, Maverick, McLennan, Montgomery, Parker, Starr, Tarrant, Tom Green, Travis, Val Verde, Webb and Wilson counties).

I have served as an expert on Mexican law on behalf of the United States of America, the United States Department of Justice and former Attorney General Lorreta Lynch; on behalf of major institutions, such as the Archdiocese of Los Angeles; on behalf of major companies, such as Aeromexico, Daimler Chrysler, General Electric, Bell Helicopter, Alcoa Fujikura, Nissan, Siemens Power Corporation, Goodrich Corporation, Federal Express, UPS, Sherwin-Williams and Halliburton Energy Services; and on behalf of many individuals and small companies, including Mexican Boxer Saul "Canelo" Alvarez.

Since 1997, I have been retained as a Mexican law expert by lawyers from Mexico, Canada and Scotland as well as from Arizona, California, Connecticut, Colorado, Florida, Georgia, Idaho, Illinois, Iowa, Louisiana, Massachusetts, Minnesota, New York, Oklahoma, Pennsylvania, Texas, Washington and Washington, D.C.

I have served as a consulting expert on Mexican law on hundreds of other matters, including serving as a consultant on the Mexican legal system for National Public Radio's "Planet Money" and "The Indicator" Podcasts.

1.5 In connection with the Defendants' *Motion to Dismiss for Forum Non Conveniens*, I have been asked to opine on the claims and remedies available to Plaintiff under Mexican law and on whether Mexico is an available forum for Plaintiff's case. I reserve the right to supplement my opinions as requested by the Court or Defendants.

1.6 In formulating opinions on these issues I have relied on my general familiarity with Mexican law and the Mexican legal system. I have consulted the sources of Mexican law

cited below. In addition, I have been provided and have reviewed case-specific materials, including the following:

- Complaint (July 27, 2026),
- Registration Card and Accommodation Service Agreement (Oct. 5, 2025),
- translation of Hotel Administration and Operation Agreement (June 2, 2012),
- translation of Hotel Reservation and Marketing Agreement (June 2, 2012),
- Notice of Assignment of Marketing Agreement (Aug. 13, 2018),
- Fusión de Sociedades (Dec. 19, 2018),
- Incident report by Fernando Jasso (Oct. 7, 2025),
- Guest Incident Report (Oct. 7, 2025), and
- Passport photo pages for Chandler Lee and Andrew Lee.

The conclusions that follow assume that these documents are authentic, that they accurately portray developments in this case, and that the copies of them in my possession are true and complete.

1.7 Based upon my review of the case materials and information from counsel, I assume the following facts:

(a) As of October 2025, Chandler Lee ("Mrs. Lee") was a citizen of the United States and resident of Oklahoma.

(b) Defendant Hyatt Hotels Corporation ("HHC") is a Delaware entity headquartered in Chicago, Illinois.

Defendant Hyatt Corporation ("HC") is a Delaware entity headquartered in Chicago, Illinois.

Defendant Hyatt International Corporation ("HIC") is a Delaware entity headquartered in Chicago, Illinois.

(c) Secrets Puerto Los Cabos Golf & Spa Resort ("the Resort") is located in San Jose del Cabo, Baja California Sur, Mexico.

<u>Resort owner</u>. The Resort is, and at all relevant times was, owned by Ixe Banco, S.A. Institución de Banca Multiple ("Ixe Banco"), a Mexican financial institution, in its capacity as Trustee of Trust 737.

<u>Resort operator</u>. In June 2012, Ixe Banco and AMR Management MX, S. de R.L. de C.V. ("AMR Management") entered into a *Hotel Administration and Operation Agreement* ("the Operation Agreement") under which the latter agreed to manage and operate the Resort on behalf of Ixe Banco under the name "Secrets Puerto Los Cabos Resort & Spa."

Under the Operation Agreement, AMR Management expressly assumed the duty

"to keep the [Resort] in good condition and upkeep." Among other things, the Agreement provided that the Resort's personnel would be employees of a third party "Service Company" determined by Ixe Banco. Further, the Agreement provided that it did not create "a partnership, joint venture or other relationship between the Parties or their successors and/or assignees."

In 2018, AMR Management was merged into another Mexican entity – AMR Operaciones MX, S. de R.L. de C.V. ("AMR Operaciones") – and ceased to exist. AMR Operaciones assumed AMR Management's rights and duties under the Operation Agreement. Thus, at all times relevant hereto, AMR Operaciones managed and operated the Resort.

Resort marketer. Also in June 2012, Ixe Banco entered into a *Hotel Reservation and Marketing Agreement* ("the Marketing Agreement") with LC Sales, LLP, a United Kingdom company, and AMR Resorts Management, LLC ("AMR Marketing"), a Nevis entity. Under this Agreement, AMR Marketing agreed to market and sell accommodations and services rights related to the Resort on behalf of Ixe Banco. The Marketing Agreement provided that it created an "agency relationship" between those 2 parties, not an association, joint venture or other relationship.

In August 2018, AMR Marketing assigned all of its rights and obligations under the Marketing Agreement to AMResorts Marketing Panama, S. de R.L., a Panamanian subsidiary.

(d) On October 5, 2025, Mrs. Lee and her husband Andrew Lee arrived at the Resort. At check-in, the Lees were presented and signed a *Resort Registration Card* and *Accommodation Service Agreement* that included the following choice of law provision and forum selection clause:

> *JURISDICTION AND APPLICABLE LAW. On behalf of myself and any other person accompanying me, I agree that any claim I may have against the Hotel Owner, Hotel Manager, Hotel Franchisor, Hotel Marketer or Hotel Licensor, along with their respective parents, subsidiaries, related and affiliated companies at any tier, and their respective officers, directors, employees, agents, representatives, successors and assigns of each of the above (together, the "Hotel"), arising from or relating to any events relating to my stay in Mexico shall be governed by and construed in accordance with the laws of Mexico and further, irrevocably agree to the judiciary of Mexico as the exclusive venue for any proceedings whatsoever relating to any such claim. On behalf of myself and any other person accompanying me, I expressly waive any right to challenge jurisdiction or venue in such courts due to my current or future place of residence or nationality. On behalf of myself and any other person accompanying me, I understand and agree that this*

> *provision shall supersede and control over any contrary provision in any agreement between myself (or any other person accompanying me) and the Hotel, with respect to any dispute arising out of my or their stay at the Hotel, including but not limited to personal injury or wrongful death claims.*

Mrs. Lee contends that any forum selection clause requiring her case to be litigated in Mexico is unenforceable. Complaint, at 5.

(e) Mrs. Lee alleges that, by October 6, 2025, rain at the Resort had become a heavy downpour and created widespread flooding and water accumulation throughout the Resort. *Id.* at 6. She alleges that:

> *On or about October 7, 2025, following substantial rainfall, Defendants permitted guest walkways, restaurant-adjacent areas, and interior and exterior common areas to remain flooded, wet, slick, unreasonably dangerous, and inadequately warned. [Mrs. Lee] slipped on a slick resort walkway while traveling from the main restaurant toward a public restroom. She fell violently and suffered a severe knee injury, including a totally fractured kneecap requiring emergency care, immobilization, surgery, crutches, extended time away from work and physical therapy. As a result of [the] fall she suffered pain, and other emotional and financial damages.*

*Id.* at 1-2.

(f) Mrs. Lee has asserted claims against the Defendants for negligence / premises liability; negligent undertaking and direct negligence; agency, apparent agency, vicarious liability and joint enterprise; negligent training, supervision, retention and operations; and negligence per se / violations of safety standards. *Id.* at 8-13.

(g) Mrs. Lee seeks damages for past and future medical expenses, surgical expenses and related treatment costs, physical pain and suffering, mental anguish and emotional distress, physical impairment and loss of mobility, disfigurement and scarring, lost wages and lost earning capacity, loss of enjoyment of life, travel losses and unused vacation losses, and out-of-pocket expenses. *Id.* at 13-14.

## II.
## The Mexican Legal System

2.1 Structure. Mexican government operates according to a federal structure. The federal government maintains a court system with its own body of jurisdictional, procedural and evidentiary rules as do each of the 31 Mexican states and Mexico City. In addition, there exists in Mexico a body of federal substantive law and a separate body of substantive law in each of the states and Mexico City.

2.2 Sources of Mexican law. There are a variety of sources of law in the Mexican legal system, including constitutions, statutes, codes, official norms, regulations and judicial rulings. *See* S. Zamora, *et al.*, MEXICAN LAW 77-94 (Oxford 2004). Not all of those sources of law are of equal weight or preeminence; rather, a hierarchy of law exists in the Mexican legal system that dictates the relative importance and ordering of the various sources of law. *See id.* at 94-101.

2.3 The single most important source of law in Mexico is the Mexican Constitution of 1917 (*Constitución Política de los Estados Unidos Mexicanos*). In Mexico's hierarchy of legal sources, the federal Constitution dominates all other laws. Like the Constitution of the United States, the Mexican Constitution contains a Supremacy Clause that renders Mexican federal law supreme over state law. *See* Const., Art. 133.[1]

2.4 Statutes passed by Mexican legislative bodies are an important body of law in the Mexican legal system. *See* Zamora, *supra*, at 80.

2.5 Because Mexico is a Civil Law country, codes play a primary role in defining the relative legal rights and obligations of parties. Codes are unitary works that attempt to integrate all norms of a distinct branch of law in a systematic, comprehensive, organized and logical manner. Mexico has distinct codes to regulate civil matters, criminal matters, commerce, tax matters, civil procedure and criminal procedure. The federal government and each of the 31 Mexican states and Mexico City possess separate sets of codes. To a substantial degree, state codes often parallel the provisions and language of the federal codes.

2.6 Among Mexican codes, none is more central than the civil code. The *Código Civil Federal* ("Federal Civil Code") governs throughout the country in federal matters. The *Código Civil para el Estado Libre y Soberano de Baja California Sur* ("Civil Code of the Free and Sovereign State of Baja California Sur" or "CCBCS") applies in the State of Baja California Sur in non-federal matters.

2.7 As a general matter, Mexican civil codes cover all matters in the civil legal realm, including the civil status of individuals, family law, assets, property, succession, contracts and other forms of civil obligations. Mexican civil codes do not provide for a series of torts like those found in Common Law jurisdictions; rather, rules concerning civil liability between private parties are set forth in the portion of the civil codes titled "Obligations" (*De las Obligaciones*). The law of obligations encompasses not only tort theories but also contract and quasi-contract theories of legal duty.

## III.
## Choice of Law

**Question**: What body of Mexican law would govern the claims and remedies available to Mrs. Lee, if any?

---

1 Copies of the Mexican law provisions cited in this Declaration are set forth in **Exhibit 2**. An English translation of those provisions is set forth in **Exhibit 3**.

**Short Answer**: The claims and remedies at issue in this case would be governed by the law of the State of Baja California Sur and, in particular, by the Civil Code of Baja California Sur.

3.1 In Mexico, state civil codes apply to persons who are physically present in a state and to matters of local interest such as personal injury that occurs in the state. *See* 2 Jorge A. Vargas, MEXICAN LAW: A TREATISE FOR LEGAL PRACTITIONERS AND INTERNATIONAL INVESTORS 210, 220 (1998) ("The occurrence of a tortious act within any of the 31 States leads to the automatic application of the law of the State in question, as provided by the pertinent provisions of its own State Civil Code.").

This certainly is true in the State of Baja California Sur. Article 1 of the Civil Code of Baja California Sur provides:

> *The provisions of this Code shall govern in the State of Baja California Sur in civil matters and in a supplementary manner in all state legislation.*

CCBCS, Art. 1. Further, Article 12 of that Code states:

> *The laws of the State of Baja California Sur, including those that refer to civil status and the capacity of persons, shall apply to all inhabitants of the State, whether they are nationals or foreigners, domiciled in it or transients; but when dealing with foreigners, the provisions of federal laws on the subject will be considered.*

CCBCS, Art. 12.

3.2 Under these provisions, one would look to the Civil Code of Baja California Sur to determine the relative legal rights and obligations of the parties in this case because the incident at issue took place in Baja California Sur and Mrs. Lee was in the State at the time of it occurred.

## IV.
## Civil Claims Under Baja California Sur Law

**Question**: Does Baja California Sur law provide claims that Mrs. Lee could pursue against the Defendants?

**Short Answer**: Yes. The law of Baja California Sur provides for "subjective liability" claims – claims that entitle persons injured by the illegal or negligent conduct of another to recover damages. In addition, Baja California Sur law provides for "objective liability" claims – claims in the nature of a strict liability claim.

4.1 Allegations. Mrs. Lee asserts claims for negligence / premises liability; negligent undertaking and direct negligence; agency, apparent agency, vicarious liability and joint

enterprise; negligent training, supervision, retention and operations; and negligence per se / violations of safety standards

4.2 Subjective Liability Claim. As noted above, Mexican law consolidates civil wrongs that a U.S. lawyer thinks of as "torts" as well as contract and quasi-contract theories under a single umbrella called "obligations" (*obligaciones*). In Mexico, the core claim for extra-contractual civil liability is what is called "subjective liability" (*responsabilidad subjetiva*).

In Baja California Sur, subjective liability claims are based on Article 1815 of the Civil Code, which states:

> *He who acting illicitly or against good customs causes damage to another is obligated to repair it, unless he can prove that the damage was caused as a result of the inexcusable fault or negligence of the victim.*

CCBCS, Art. 1815. An "illicit act" is one that is contrary to law or against "good customs." CCBCS, Art. 1735. In a Mexican complaint, Mrs. Lee would assert that a defendant negligently or illicitly committed an act or omission that caused her injury.

Subjective Premises Liability. The law of many Mexican states provides for the liability of real property owners for damages caused by conditions on their property that are due to the owner's lack of vigilance, care, foresight or general negligence. While Article 1838 of the Baja California Sur Civil Code does not expressly provide such a claim, it does so implicitly. It provides that real property owners are liable for "any cause that unlawfully gives rise to damage." CCBCS, Art. 1838. Mrs. Lee would use Article 1838 as an additional basis for a defendant's liability to her.

4.3 Objective Liability Claim. The Civil Code of Baja California Sur also provides a claim for objective liability – liability not contingent on fault. Article 1818 states:

> *If a person makes use of mechanisms, instruments, apparatuses or substances which by themselves are dangerous, due to the speed they develop, their explosive or flammable nature, by the electrical current they produce or similar causes, he is obligated to respond for the damage they cause, even if he is not using them illicitly, unless he can prove that the damage was caused by the inexcusable fault or negligence of the victim.*

CCBCS, Art. 1818.

Mrs. Lee would be able to pursue an objective liability claim if it is determined, for example, that the flooding on the Resort walkway where she slipped was so severe that it presented an inherently dangerous condition. The obvious defendants on such a claim would be Ixe Banco and AMR Operaciones, the owner and operator of the Resort, because they clearly were "making use" of the premises of the Resort when Mrs. Lee was injured. 3 Rafael Rojina Villegas, COMPENDIO DE DERECHO CIVIL: TEORÍA GENERAL DE LAS OBLIGACIONES 280 (30th ed. 2012). To state an objective liability claim against the

Defendants herein, Mrs. Lee would need to allege and establish that they were making use of the Resort at the time of injury.

4.4 Vicarious liability. Baja California Sur law provides several bases for vicarious liability. Article 1830 of the Civil Code provides for *respondeat superior* liability and states:

> *Employers and owners of commercial establishments are obligated to respond for damages and losses caused by their workers or dependents in the exercise of their functions. This liability ceases if they prove that in the commission of the damage no fault or negligence can be imputed to them.*

CCBCS, Art. 1830. With regard to hotels in particular, Article 1831 provides:

> *Heads of households or owners of hotels or lodging houses are obligated to respond for damages caused by their servants in the performance of their duties.*

CCBCS, Art. 1831. Under these provisions, Mrs. Lee could assert that the "Service Company" that is the employer of the Resort staff is vicariously liable for their acts and omissions and that Ixe Banco, the owner of the Resort, is vicariously liable for the acts and omissions of AMR Operaciones, the Resort operator, and possibly those of the "Service Company" that supplied the Resort's staff.

4.5 Limitations. The statute of limitations for bringing subjective and objective liability claims is 2 years from the day on which the injury occurred. *See* CCBCS, Art. 1840. October 7, 2027 will be 2 years from the date of Mrs. Lee's injury – and that date represents the earliest date by which limitations on her Mexican law claims could run.

However, Baja California Sur law provides for the tolling of limitations by the filing of suit. CCBCS, Art. 1173(II). This means that limitations on Mrs. Lee's claims under Mexican law tolled when she filed this case on July 27, 2026, so that only about 10 months of the 2-year limitations period have expired. Thus, her case would not present a limitations issue if she were to initiate suit in Mexico in the next year or so.

## V.
## Material Damages Under Baja California Sur Law

**Question:** What damages would be available to Mrs. Lee in connection with a civil claim under Baja California Sur law?

**Short Answer:** In a case such as this one, the law of Baja California Sur provides for "material damages" consisting of (1) an indemnification based on wage rates and (2) compensation for medical expenses. Only damages that are a "direct and immediate" consequence of a defendant's illicit or negligent conduct can be recovered.

5.1 Allegations. As noted above, Mr. Lee seeks damages for past and future medical expenses, surgical expenses and related treatment costs, lost wages and lost earning capacity, travel losses and unused vacation losses, and out-of-pocket expenses. These are in the nature of Mexican "material damages."

5.2 Material damages. If she were to prevail on a subjective or objective liability claim, Mrs. Lee would be entitled to recover material damages (*daños materiales*) in accordance with Article 1820 of the Civil Code of Baja California Sur and various provisions of the Federal Labor Law ("*Ley Federal del Trabajo*"). Material damages are what a U.S. lawyer might think of as economic damages.

5.3 Article 1820 states:

> *Compensation for damages shall consist, at the election of the injured party, of restoration of the prior situation, when that is possible, or in the payment of damages and losses.*
>
> *If damage is caused to persons and results in death, total or permanent disability, partial permanent disability, total temporary disability or partial temporary disability, the amount of compensation shall be determined in accordance with the provisions of the Federal Labor Law. In order to calculate the corresponding indemnification, quadruple the daily value of the Unit of Measure and Actualization shall be taken as the base, and shall extend for the number of days provided for each of the mentioned disabilities in the Federal Labor Law. In case of death, the indemnification is owed to the heirs of the victim.*
>
> *If the injured party was a wage-earner, the compensation is non-transferable and preferably shall be paid in one lump sum, absent agreement between the parties.*
>
> *The prior provisions shall be observed in the case of Article 2561 of this Code.*

CCBCS, Art. 1820. Thus, computation of the indemnification under Baja California Sur law begins by categorizing the plaintiff's injury based on degree of disability, ranging from death to temporary partial disability. Once the degree of disability is determined, the next step is to multiply quadruple the applicable daily value of the Unit of Measurement and Actualization ("UMA") by the number of days set forth in the Federal Labor Law for the corresponding degree of disability. The UMA is an economic unit of reference set by Mexico's National Institute of Statistics and Geography (*Instituto Nacional de Estadística y Geografía*) to determine the amount of payments for legal obligations.

5.4 Medical Expenses. In addition to an indemnification, material damages under Mexican law include medical, rehabilitation and hospitalization expenses incurred by the injured party. *See* S. Zamora, *supra*, at 525. Article 487 of the Federal Law Labor provides:

*Workers who suffer a work-related injury shall have the right to:*

*I. medical and surgical assistance;*
*II. rehabilitation;*
*III. hospitalization, when required;*
*IV. medications and curative materials;*
*V. necessary prosthetic and orthopedic devices; and*
*VI. the indemnification specified in this Title.*

FLL, Art. 487. The amount of a Mrs. Lee's recovery for medical or "curative" expenses would depend on what she can prove she incurred in medical expenses.

## VI.
## Moral Damages

**Question**: Can Mrs. Lee pursue a "moral damages" claim under Mexican law?

**Short Answer**: Mrs. Lee possesses a moral damages claim that she can pursue under Article 1821 of the Civil Code of Baja California Sur.

6.1 Allegations. As noted above, Mrs. Lee seeks to recover damages for physical pain and suffering, mental anguish and emotional distress, physical impairment and loss of mobility, disfigurement and scarring and loss of enjoyment of life. These are in the nature of moral injury.

6.2 Source. In addition to material damages, Mexican law authorizes the recovery of moral damages (*daños morales*) in certain cases. Moral damages compensate for non-physical and intangible injuries that a person suffers in his feelings, affections, beliefs, honor, decorum, reputation, privacy, and physical image, or in how he is perceived by others. Moral damages mostly are associated with libel and defamation claims and strict liability cases. Vargas, *supra*, at 230.

6.3 In Baja California Sur, claims for moral damages are based on Article 1821 of the Baja California Sur Civil Code. That provision states, in relevant part:

*Moral injury means the impact that a person suffers in his feelings, affections, beliefs, decorum, honor, reputation, privacy, image and physical appearance, or how he is perceived in the opinion of others. Moral injury shall be presumed when the freedom or physical or psychological integrity of persons is unlawfully violated or restricted.*

*If an illicit act or omission causes a moral injury, the person liable for the same shall have the obligation to repair it by means of an indemnification paid in money, independent of whether any material injury has been caused, both for contractual liability as well as extracontractual liability. He who incurs objective liability in accordance with Article 1818, as well as the*

> *State, the Municipalities and their public servants in accordance with Article 1834, shall have the same obligation to repair the moral injury. The action for reparation is not transferable to third parties by inter vivos agreement and only passes to heirs of the victim when the action was brought while the victim was alive.*
>
> *The judge shall determine the amount of the indemnification taking into account the rights violated, the degree of liability, the economic situations of the liable party and of the victim, and other circumstances of the case.*
> ....

CCBCS, Art. 1821.

6.4 In this case, under Mexican law, Mrs. Lee could assert a moral damages claim against any entity or person who she can establish directly and immediately caused her moral injury. Assuming that liability for causing moral injury is established, the amount of compensation would be determined by the judge taking into account the rights violated, the degree of liability, the economic condition of the defendant and of the victim, and the other circumstances of the case. CCBCS, Art. 1821(¶ 4).

## VII.
## Alternative Forum

**Question**: Is there a court in Mexico in which Mrs. Lee could pursue her claims against Defendants?

**Short Answer**: Yes. Mrs. Lee could file suit against Defendants in a state court in Baja California Sur and possibly elsewhere in Mexico.

7.1 Jurisdictional bases. Precisely as is true in the United States, the jurisdiction of courts in Mexico is a function of subject matter, amount in controversy and geography (or territorial bounds). In Mexico, subject matter jurisdiction is called *competencia por materia*, jurisdiction based on amount in controversy is called *competencia por valor* or *competencia por cuantía*, and jurisdiction based on geographic boundaries is called *competencia territorial* or *competencia por territorio*.

7.2 Subject matter jurisdiction – Baja California Sur state courts. Mrs. Lee could file suit in a state court in Baja California Sur. Baja California Sur state courts of first instance have subject matter jurisdiction over matters arising under state law generally. *See* Organic Law of the Judiciary of the State of Baja California Sur (*Ley Orgánica del Poder Judicial del Estado de Baja California Sur* or "LOPJBCS"), Art. 43(III). Because Mrs. Lee's claims against Defendants would be based on Baja California Sur law, they are within the subject matter jurisdiction of Baja California Sur state courts.

7.3 Territorial jurisdiction – Baja California Sur state courts. The judiciary of the State of Baja California Sur consists of a Superior Court of Justice (*Tribunal Superior de Justicia*), courts

of first instance (*juzgados de primera instancia*), labor courts (*tribunales laborales*), small claims courts (*juzgados menores*) and justice of the peace courts (*juzgados de paz*).[2] Geographically, the State is divided into 5 judicial districts with the City of San Jose del Cabo, where the accident at issue occurred, being located in the Los Cabos Judicial District.[3] There are 2 state civil courts of first instance in San Jose del Cabo.[4]

Under Baja California Sur's Code of Civil Procedure (*Código de Procedimientos Civiles para el Estado de Baja California Sur* or "CPCBCS"), the state civil courts in San Jose del Cabo would have territorial jurisdiction over Mrs. Lee's case on two grounds. First, if she were to include Ixe Banco, the Resort's owner, as a defendant in her Mexican complaint, she could base territorial jurisdiction on the forum selection clause set forth in the *Resort Registration Card* quoted in Section 1.7(d) above. Under Baja California Sur law, the place indicated in a contract for securing compliance with the contract is a proper forum for a dispute involving or arising out of the contract. CPCBCS, Art. 156(II). She could include HHC, HC and HIC as additional defendants in that case, even though they are not domiciled in the State. CPCBCS, Art. 156(IV).

Second, if Mrs. Lee were to choose to sue only HHC, HC and HIC in Mexico, she and those parties could voluntarily submit to the territorial jurisdiction of the state courts in San Jose del Cabo. Article 151 of the State's Code of Civil Procedure provides that litigants can "expressly or tacitly submit" to the jurisdiction of a specific court. CPCBCS, Art. 151. Mrs. Lee, HHC, HC and HIC could <u>expressly</u> submit to the jurisdiction of the state courts in San Jose del Cabo by clearly and unequivocally renouncing other forums and designating those courts with precision. CPCBCS, Art. 152. Additionally, Mrs. Lee could <u>tacitly</u> submit to the state courts in San Jose del Cabo by filing her lawsuit there and HHC, HC and HIC could do so by voluntarily answering her complaint without asserting any objection to the courts' jurisdiction. CPCBCS, Art. 153.

The states courts in Baja California Sur are not the only Mexican courts in which Mrs. Lee could bring suit. As a general rule in Mexican law, the courts of a defendant's domicile have territorial jurisdiction over a case. Ixe Banco and AMR Operaciones are Mexican entities domiciled in Mexico. If Mrs. Lee elects to sue either or both of those parties in a Mexican case, she could file the case where they are domiciled and include HHC, HC and HIC as additional defendants.

## VIII.
## Final Points

8.1 My hourly fee for serving as an expert on Mexican law in this case is $750.00. In no event is my expert witness fee contingent upon the substance of opinions rendered by me.

8.2 To the best of my knowledge and information, I have testified live as an expert on Mexican law by deposition, in court or in arbitration during the preceding four-year period (October

2 *See* LOPJBCS, Art. 3.
3 *See* LOPJBCS, Art. 6.
4 *See* <www.tribunalbcs.gob.mx>.

2022 to October 2026) in the following cases:

Dulces Arbor, S. de R.L. de C.V. and Blueberry Sales, LLP v. Accel, S.A.B. de C.V., Elamex, S.A. de C.V., Elamex USA, Corp., Mount Franklin Foods, LLC, Sunrise Candy, LLC, Casas Grandes Confections, LLC, Robert J. Whetten, David Stewart and Intersorting USA, LLC, Simply Goodies, LLP, Confecciones de Juarez, S.A. de C.V., Dulces Blueberry, S.A. de C.V., Elamex de Occidente, S.A. de C.V., and Maple Commercial Finance Corp. v. Blueberry Sales, LLP, Dulces Arbor, S. de R.L. de C.V., Casa Brokers, Raymond Ducorsky, Mark Ducorsky and Brad Ducorsky and Mark Ducorsky and Brad Ducorsky v. Maple Commercial Finance Corp., No. 2009-765, County Court at Law No. 7, El Paso County, Texas [4/23];

Jesus Granados, Individually and as the Administrator of the Estate of Maria Granados; Luis Granados; Luis Eduardo Granados; and Jose Granados v. Greyhound Lines, Inc.; Autobuses Estrella Blanca, S.A. de C.V.; and Bus Driver, name unknown, No. DC-20-19065, 193rd District Court, Dallas County, Texas [8/23];

In the Matter of the Estate of Joseph J. Krivulka, Docket No.: MON-P-262-20 (Surrogate Docket No. 252593), Superior Court of New Jersey, Chancery Division: Monmouth County [8/23];

Eduardo Martinez Valadez, et al. v. Zavala Plus, LLC, No. DC-23-16986, 95th District Court, Dallas County, Texas [4/25];

In the Interest of Hernan Zertuche Zamora and Catalina Zertuche Zamora, Children, No. 23-002625-CV-85, 85th District Court, Brazos County, Texas [9/25];

United States of America v. Ramon Alexandro Rovirosa Martinez, Mario Alberto Avila Lizarraga, Criminal No. 4:25-cr-00415, U.S. District Court for the Southern District of Texas [Houston Division] [12/25];

Concepcion Valadez Montoya, Francisco F. Montoya, Maria Vilchiz, Rito Salvador Yanez, Alejandro Yanez, Homero Aguirre, Avelina Aguirre, Jorge Villalobos, Alma Villalobos, Rafael Alvarez, Diana Alvarez, Maria Ledesma, Jose Luis Ledesma, Juana Ledesma Gonzalez, Individually and as Next Friend of K.J.G. vs. Autobuses Ejecutivos, LLC d/b/a OMEXVIP, d/b/a Omnibus and d/b/a Omnibus Express, Bus Investors, LLC and Dos Naciones, LLC, No. C-4074-24-J, 430th District Court, Hidalgo County, Texas [1/26];

Fox Corporation, Fox Media, LLC and Fox Sports en Español v. Laura Poala Arroyo Rodriguez, No. 4:25-CV-04650, U.S. District Court for the Southern District of Texas [Houston Division] [3/26];

In the Matter of the Marriage of Maria Angeles Sanchez Jimenez and Antonio Fernando Mariscal Romero, No. 25-09-14718, 418th District Court, Montgomery

County, Texas [5/26]; and

Del Records, Inc., et al. v. Jesus Jaime Gonzalez Terrazas, et al., No. 2:16-cv-03666 ODW, U.S. District Court for the Central District of California (Western Division) [7/26].

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed in San Antonio, Texas on October 13, 2026.

DAVID LOPEZ

*CURRICULUM VITAE*

**DAVID LOPEZ**
Cacheaux, Cavazos & Newton, L.L.P.
333 Convent Street
San Antonio, Texas 78205
Tel: (210) 222-1642
Fax: (210) 222-2453
*dlopez@ccn-law.com*

**EDUCATION:**

HARVARD LAW SCHOOL, Cambridge, Massachusetts
Class of 1988, J.D.
Graduation Honors: **cum laude**
Editor, HARVARD LAW REVIEW, Volumes 100 & 101

GEORGETOWN UNIVERSITY, School of Foreign Service, Washington, D.C.
Class of 1985, B.S.F.S., International Economics Major
Graduation Honors: **magna cum laude**
Member, Phi Beta Kappa

**LEGAL POSITIONS:**

CACHEAUX, CAVAZOS & NEWTON, L.L.P., San Antonio, Texas
Partner and Head of International Litigation, September 2017 to the present

PULMAN, CAPPUCCIO, PULLEN, BENSON & JONES, L.L.P., San Antonio, Texas
Partner, January 2008 to July 2017

DAVIS, CEDILLO & MENDOZA, INC., San Antonio, Texas
Partner, January 2003 to December 2007
Of Counsel, June 2001 to December 2002
Senior Litigation Associate, June 1992 to July 1993

GIBSON, DUNN & CRUTCHER, Los Angeles, California
August 1990 to June 1992
Corporate Litigation Associate

SAN ANTONIO COMMUNITY LAW CENTER, San Antonio, Texas
August 1988 to May 1990
Co-Founder, Co-Director and Staff Attorney

**PROFESSIONAL RECOGNITION:**

**Rated "AV Preeminent 5.0"** by Martindale-Hubbell

EXHIBIT
tabbies
1

Master of the Bench, William S. Sessions American Inn of Court, San Antonio, Texas

Member, The Million Dollar Advocates Forum (since 2006)

**AMERICAN ACADEMY OF MEXICAN LAW EXPERTS**

Co-Founder & First President (July 2022 to June 2024)

**ACADEMIC POSITIONS:**

ST. MARY'S UNIVERSITY SCHOOL OF LAW, San Antonio, Texas
Adjunct Professor of Law, Fall 2008, 2009, 2010 & 2012
International Commercial Arbitration Seminar (with Judge John Specia)

ST. MARY'S UNIVERSITY SCHOOL OF LAW, San Antonio, Texas
Full Professor of Law with tenure, June 1997 to May 2003
Associate Professor of Law, August 1993 to May 1997

UNIVERSITY OF CALIFORNIA - DAVIS, Davis, California
August 1997 to May 1998
Visiting Professor of Law

BAYLOR LAW SCHOOL, Study Abroad Program in Guadalajara, Jalisco, México
Summer 1996, 1997, 1998, 1999 and 2000
Visiting Professor, Universidad Autónoma de Guadalajara

**APPOINTMENTS:**

Admissions Committee, U.S. District Court, Western District of Texas (2012-2018)

Advisory Board, Center for U.S. and Mexican Law, University of Houston Law Center (2012 – 2018)

Appointed by Ambassador Charlene Barshefsky, U.S. Trade Representative, to the Roster of Eligible Binational Panelists under Chapter 19 of the North American Free Trade Agreement (April 1998 – March 2003)

**BOOKS AND BOOK CHAPTER:**

Co-Author, MEXICAN LAW (together with Professor Stephen Zamora of the University of Houston Law Center and Director José Ramón Cossío Díaz, Professor Leonel Pereznieto Castro, and Professor José Roldán Xopa of the Instituto Tecnológico Autónomo de México) (Oxford University Press 2004)

Co-Author, NAFTA: A PROBLEM ORIENTED COURSEBOOK (together with Professor Ralph Folsom of the University of San Diego School of Law and Professor Michael W. Gordon of the University of Florida College of Law) (West Publishing Co. 2000)

Co-Author, 2000 DOCUMENTS SUPPLEMENT TO NAFTA: A PROBLEM ORIENTED COURSEBOOK (together with Folsom and Gordon) (West Publishing Co. 2000)

Co-Author, TEACHER'S MANUAL TO ACCOMPANY NAFTA: A PROBLEM ORIENTED COURSEBOOK (together with Folsom and Gordon) (West Publishing Co. 2000)

Author, *The Legal System of Mexico*, Chapter 3, MODERN LEGAL SYSTEMS CYCLOPEDIA (William S. Hein & Co. 2000)

**ARTICLES:**

Article, *Is Mexico an "Adequate Alternative Forum" for Litigation? The Texas Supreme Court and Fifth Circuit Speak*, 71 TEX. BAR J. 270 (April 2008)

Lead Article, *Dispute Resolution Under NAFTA: Lessons from the Early Experience,* 32 TEX. INT'L L.J. 163 (1997)

Lead Article, *Dispute Resolution Under MERCOSUR from 1991 to 1996: Implications for the Formation of a Free Trade Area of the Americas*, 3 NAFTA LAW & BUS REV. OF THE AMERICAS 3 (Spring 1997)

Article, *Dispute Resolution Under a Free Trade Area of the Americas: The Shape of Things to Come*, 28 U. MIAMI INTER-AM. L. REV. 597 (1997)

Article, *Why Texas Courts are Defenseless Against Frivolous Appeals: A Historical Analysis with Proposals for Reform*, 48 BAYLOR L. REV. 51 (1996)

Note, *Reexamining the Constitutionality of INS Workplace Raids After the Immigration Reform and Control Act of 1986*, 100 HARV. L. REV. 1979 (1987)

**PUBLICATION HONORS:**

Nominee, Outstanding Law Review Article - 1997, Texas Bar Foundation (for *Dispute Resolution Under NAFTA: Lessons from the Early Experience*)

**PROFESSIONAL MEMBERSHIPS:**

State Bar of Texas (since 1988)
State Bar of California (since 1990)
Court of Appeals for the Second Circuit (since 2014)
Court of Appeals for the Fifth Circuit (since 2003)
Member, American Bar Association (1993-2008)
Member, Bar Association of the Fifth Federal Circuit (since 2003)
Life Fellow, Texas Bar Foundation
Life Fellow, San Antonio Bar Foundation
Co-Chair, Subcommittee on NAFTA, American Bar Association (1997 - 2001)
Chair, Section on North American Cooperation, AALS (2001)
Member, National Association of College and University Attorneys (2000-2001)
Chief Coodinator, ABA Conference on "Practicing Law in the Era of NAFTA: Mastering the New Global Marketplace," San Antonio, Texas (March 18-19, 1999)

**LECTURES AND PRESENTATIONS:**

Guest Speaker, "Recent Developments in the Mexican Legal System," Introduction to the Law of Mexico, University of Houston Law Center, Houston, Texas (Mar. 4, 2026)

Presenter, Model Form of Affidavit on Foreign Law, "Best Practices Series," AAMLE Annual Meeting, Universidad Panamericana, Mexico City, Mexico (Mar. 23, 2024)

Guest Speaker, "Civil Codes," Introduction to the Law of Mexico, University of Houston Law Center, Houston, Texas (Feb. 22, 2023)

Guest Speaker, "Obligations (Contractual and Extra-Contractual)," Introduction to the Law of Mexico, University of Houston Law Center, Houston, Texas (March 9, 2022)

Presenter, "28 U.S.C. § 1782 and the Forced Disclosure of Confidential Business Records and Other Evidence Located in Mexico," Cacheaux, Cavazos & Newton, San Antonio, Texas (Aug. 10, 2021)

Speaker, "Jurisdiction and Venue – Where Does the Case Belong?," Advanced Civil Trial Course 2017, State Bar of Texas, San Antonio, Texas (July 21, 2017)

Speaker, "Pitfalls and Opportunities for the (Conscientious) Lawyer in Managing Cross-Border Legal Disputes," International Law Section of the San Antonio Bar Association, San Antonio, Texas (Feb. 10, 2017)

Speaker, "Enforcing Foreign Judgments in Texas Courts and Citation of Process upon Foreign Persons," San Antonio Bar Association, San Antonio, TX (Aug 21, 2014)

Speaker, "Mexican Law and Legal Research: Overcoming the Challenges," American Ass'n of Law Libraries 2014 Annual Meeting, San Antonio, TX (July 15, 2014)

Guest Professor, Federal Courts Class of U.S. District Judge Xavier Rodriguez, St. Mary's University Law School, San Antonio, Texas (Feb. 4, 2014)

Speaker, "Issues Relating to Mexican Law – Plaintiff/Alien," Prosecuting or Defending a Trucking or Auto Accident Case, State Bar of Texas, San Antonio (Oct. 31, 2013)

Speaker, "Federal Rules and Local Rules of the Western District of Texas, San Antonio Division," Federal Court Practice Seminar, San Antonio, Texas (Sept. 13, 2013)

Speaker, "Federal Rules and Local Rules of the Western District of Texas, San Antonio Division," Federal Court Practice Seminar, San Antonio, Texas (May 17, 2013)

Panelist, "Dealing with Foreign Jurisdictional Property Issues," New Frontiers in Marital Property Law, State Bar of Texas, New Orleans, Louisiana (Oct. 5, 2012)

Panelist, *En Juicio: XXIV Simposium Internacional de Derecho*, Instituto Tecnológico y de Estudios Superiores de Monterrey, Monterrey, Mexico (Sept. 21, 2012)

Speaker, "Federal Rules and Local Rules of the Western District of Texas, San Antonio Division," Federal Court Practice Seminar, San Antonio, Texas (May 18, 2012)

Speaker, "A Practical Guide to Collecting Debts in Mexico," Mastering the Art of Collecting Debts and Judgments, University of Texas School of Law, Austin, Texas (Sept. 2, 2011)

Speaker, "Federal Rules and Local Rules of the Western District of Texas, San Antonio Division," Federal Court Practice Seminar, San Antonio, Texas (Sept. 17, 2010)

Speaker, "Federal Rules and Local Rules of the Western District of Texas, San Antonio Division," Federal Court Practice Seminar, San Antonio, Texas (May 14, 2010)

Speaker, "Federal Rules and Local Rules of the Western District of Texas, San Antonio Division," Federal Court Practice Seminar, San Antonio, Texas (Feb. 5, 2010)

**LECTURES AND PRESENTATIONS (cont.):**

Speaker, "What Texas Lawyers Need to Know About Mexican Law," San Antonio Bar Association Int'l Law Section, San Antonio, Texas (Dec. 11, 2009)

Panelist, "The Application of Mexican Law by U.S. Judges in Cross-Border Disputes," U.S-Mexico Bar Ass'n Annual Meeting, San Diego, California (Nov. 12, 2009)

Speaker, "Spoliation and Legal Malpractice," Business Torts Institute, State Bar of Texas, Dallas, Texas (Oct. 30, 2009)

Speaker, "Federal Rules and Local Rules of the Western District of Texas, San Antonio Division," Federal Court Practice Seminar, San Antonio, Texas (Sept. 18, 2009)

Speaker, "Federal Rules and Local Rules of the Western District of Texas, San Antonio Division," Federal Court Practice Seminar, San Antonio, Texas (May 8, 2009)

Speaker, "Federal Rules and Local Rules of the Western District of Texas, San Antonio Division," Federal Court Practice Seminar, San Antonio, Texas (Feb. 6, 2009)

Speaker, "What Texas Lawyers Need to Know About Mexican Law," Austin Bar Association, Austin, Texas (June 20, 2008)

Speaker, "Federal Rules and Local Rules of the Western District of Texas, San Antonio Division," Federal Court Practice Seminar, San Antonio, Texas (May 9, 2008)

Speaker, "Federal Rules and Local Rules of the Western District of Texas, San Antonio Division," Federal Court Practice Seminar, San Antonio, Texas (Feb. 1, 2008)

Speaker, "Federal Rules and Local Rules of the Western District of Texas, San Antonio Division," Federal Court Practice Seminar, San Antonio, Texas (Feb. 2, 2007)

Speaker, "Federal Rules and Local Rules of the Western District of Texas, San Antonio Division," Federal Court Practice Seminar, San Antonio, Texas (Sept. 8, 2006)

Speaker, Supreme Court Review: The 2004-2005 Term, American Public Power Association Legal Seminar, San Antonio, Texas (Nov. 13, 2005)

Speaker, "Federal Rules and Local Rules of the Western District of Texas, San Antonio Division," Federal Court Practice Seminar, San Antonio, Texas (Sept. 16, 2005)

Speaker, "Federal Rules and Local Rules of the Western District of Texas, San Antonio Division," Federal Court Practice Seminar, San Antonio, Texas (March 4, 2005)

Guest Lecturer, "Comparison of the U.S. and Mexican Legal Systems," Baylor Law School Study Abroad Program, Guadalajara, Jalisco, México (August 15, 2003)

Guest Lecturer, "Intellectual Property Protection Under NAFTA," Monterrey Tec Video-conference Course (*Curso de Tratados Comerciales Internacionales de México*), from San Antonio, Texas (April 25, 2001)

"NAFTA: Emerging Issues," Annual Meeting of the State Bar of Texas, Hispanic Issues Section, San Antonio, Texas (June 24, 2000)

"NAFTA - Recent Developments," San Antonio Bar Association International Law Section, San Antonio, Texas (June 9, 2000)

Guest Lecturer, "NAFTA," Mexican Legal Studies Program, University of Houston Law Center, Mexico City, Mexico (June 6, 2000)

"Transnational Legal Practice Under NAFTA," Association of American Law Schools, Annual Meeting, Washington, D.C. (Jan. 9, 2000)

"NAFTA Chapter 11: Resolution of Investments Disputes," Association of American Law Schools, Annual Meeting, Washington, D.C. (Jan. 8, 2000)

"Introducción al Sistema Legal de los Estados Unidos," Summer U.S. Law Program for Mexican Judges, U.T. Law School, Austin, Texas (July 19, 1999)

**LECTURES AND PRESENTATIONS (cont.):**

"The Mexican Legal System," San Antonio Bar Association International Law Section, San Antonio, Texas (July 9, 1999)

Presenter & Facilitator, Workshop on Comparative Law Issues, U.S.-Mexico Judicial Exchange Program Border Conference, San Antonio, Texas (June 18, 1999)

Law Class Simulation, Transformational Youth Leadership Seminar, Office of Community Devel., Texas A&M University, San Antonio, Texas (June 11, 1999)

"Introducción al Sistema de Derecho de los Estados Unidos," Consejo de la Judicatura Federal (Federal Judicial Council), Veracruz, Mexico (May 7, 1999)

"NAFTA," Capstone Course, China External Trade Agency - International Trade Institute, University of the Incarnate Word, San Antonio, Texas (March 25, 1999)

"Derecho Procesal Civil Federal," Programa de Derecho Angloamericano para Abogados Iberoamericanos, Univ. of Texas School of Law, Austin, Texas (July 21, 1998)

"Las Reformas al Poder Judicial Mexicano y el Sistema Judicial de los Estados Unidos," Departamento de Derecho, Universidad de Monterrey, San Pedro Garza García, N.L., México (April 17, 1998)

Guest Lecturer, "International Trade Dispute Resolution," Harvard Law School, Cambridge, Massachusetts (January 15-16, 1998)

"Sistemas de Derecho Contemporáneo: México-Estados Unidos," Instituto de la Judicatura Federal, México City, México (November 7, 1997)

"Introducción al Sistema Legal de los Estados Unidos," Programa de Derecho Angloamericano para Abogados Iberoamericanos, University of Texas School of Law, Austin, Texas (July 21, 1997)

"El Derecho de Agravios ('Torts') en los Estados Unidos," Centro de Estudios de Actualización Jurídica, México City, México (May 16, 1997)

"Frivolous Appeals Under the New Texas Rules of Appellate Procedure," Appellate Practice Before the Fourth and Thirteenth Courts of Appeals, San Antonio & Corpus Christi Bar Associations, Corpus Christi, Texas (May 9, 1997)

"NAFTA and Intellectual Property in Mexico," Spring Conference, International Anti-Counterfeiting Coalition, Austin, Texas (May 8, 1997)

"Ethics for the Appellate Lawyer: Frivolous Appeals," Telephone Seminar, State Bar of Texas, San Antonio, Texas (April 18, 1997)

"Toward a Free Trade Area of the Americas," Monthly Meeting of the International Law Section, San Antonio Bar Association, San Antonio, Texas (April 11, 1997)

"Cuestiones Constitucionales: Estados Unidos," Pt. II, Universidad Panamericana, Guadalajara, Jalisco, México (March 13, 1997)

"Frivolous Appeals," 10th Annual Advanced Civil Appellate Practice Course, State Bar of Texas, Austin, Texas (September 12, 1996)

"How to Avoid and Respond to Frivolous Appeals," Monthly Meeting of the Appellate Law Section, San Antonio Bar Association, San Antonio, Texas (July 26, 1996)

"Introducción al Sistema Legal de los Estados Unidos e Investigación Legal," Derecho Angloamericano para Abogados de Latino América, University of Texas School of Law, Austin, Texas (July 15, 1996)

"Comparison of Civil Law and Common Law Systems," Universidad de Anáhuac, México City, México (March 9, 1995)

"The Common Law Tradition," Universidad de Monterrey, Garza García, N.L., México (January 13, 1994)

## LAW SCHOOL ADMINISTRATIVE DUTIES:

Associate Dean for Administration (1999-2001)
Director of Foreign Program Development (1998-2001)
Member, University Task Force on Distance Learning (1999-2000)

## COURSES ORIGINATED AND DEVELOPED:

NAFTA Virtual Reality Seminar 2000 (Spring 2000)
International Trade Dispute Resolution (Fall 1997)
North American Legal Systems (Spring 1995, Spring 1996, Spring 1997)
Seminar on the North American Free Trade Agreement (Spring 1994, Fall 1995)

# CONSTITUCIÓN POLÍTICA DE LOS ESTADOS UNIDOS MEXICANOS

**Constitución publicada en el Diario Oficial de la Federación el 5 de febrero de 1917**

**TEXTO VIGENTE**
**Última reforma publicada DOF 07-10-2026**

**Artículo 133.** Esta Constitución, las leyes del Congreso de la Unión que emanen de ella y todos los tratados que estén de acuerdo con la misma, celebrados y que se celebren por el Presidente de la República, con aprobación del Senado, serán la Ley Suprema de toda la Unión. Los jueces de cada entidad federativa se arreglarán a dicha Constitución, leyes y tratados, a pesar de las disposiciones en contrario que pueda haber en las Constituciones o leyes de las entidades federativas.

tabbies
EXHIBIT
2

# LEY FEDERAL DEL TRABAJO

**Nueva Ley publicada en el Diario Oficial de la Federación el 1º de abril de 1970**

**TEXTO VIGENTE**
**Última reforma publicada 14-05-2026**

**Artículo 487.-** Los trabajadores que sufran un riesgo de trabajo tendrán derecho a:

**I.** Asistencia médica y quirúrgica;

**II.** Rehabilitación;

**III.** Hospitalización, cuando el caso lo requiera;

**IV.** Medicamentos y material de curación;

**V.** Los aparatos de prótesis y ortopedia necesarios; y

**VI.** La indemnización fijada en el presente Título.

# CÓDIGO CIVIL
# PARA EL ESTADO LIBRE Y SOBERANO DE BAJA CALIFORNIA SUR

**Ley publicada en el Boletín Oficial del Gobierno del Estado de Baja California Sur el 19 de Julio de 1996**

**TEXTO VIGENTE**
**Última reforma publicada BOGE 08-09-2026**

**Artículo 1o.-** Las disposiciones de este Código regirán en el Estado de Baja California Sur en asuntos del orden civil y con carácter supletorio en toda la legislación estatal.

**Artículo 12.-** Las leyes del Estado de Baja California Sur, incluyendo las que se refieren al estado y capacidad de las personas, se aplican a todos los habitantes del mismo, ya sean nacionales o extranjeros, estén domiciliados en él o sean transeúntes; pero tratándose de extranjeros se tendrá presente lo que dispongan las leyes federales sobre la materia.

**Artículo 1173.-** La prescripción se interrumpe:

I.- Si el poseedor es privado de la posesión del bien o del goce del derecho por más de un año;

II.- Por demanda o cualquier otro género de interpelación judicial notificada al poseedor o al deudor en su caso.

Se considerará la prescripción como no interrumpida por la interpelación judicial si el actor desistiese de ella o fuese desestimada su demanda; y

III.- Porque la persona a cuyo favor corre la prescripción reconozca expresamente, de palabra, por escrito o tácitamente por hechos indudables, el derecho de la persona contra quien prescribe.

Empezará a contarse el nuevo término de la prescripción, en caso de reconocimiento de las obligaciones, desde el día en que se haga; si se renueva el documento, desde la fecha del nuevo título, y si se hubiere prorrogado el plazo del cumplimiento de la obligación, desde que éste hubiere vencido.

**Artículo 1735**.- Es ilícito el hecho que es contrario a las leyes de orden público o a las buenas costumbres.

**Artículo 1815**.- El que obrando ilícitamente o contra las buenas costumbres cause daño a otro, está obligado a repararlo, a menos que demuestre que el daño se produjo como consecuencia de culpa o negligencia inexcusable de la víctima.

**Artículo 1818**.- Cuando una persona hace uso de mecanismos, instrumentos, aparatos o substancias peligrosas por sí mismos, por la velocidad que desarrollen, por su naturaleza explosiva o inflamable, por la energía de la corriente eléctrica que conduzcan o por otras causas análogas, está obligada a responder del daño que cause, aunque no obre ilícitamente, a no ser que demuestre que ese daño se produjo por culpa o negligencia inexcusable de la víctima.

**Artículo 1820**.- La reparación del daño debe consistir a elección del ofendido en el restablecimiento de la situación anterior, cuando ello sea posible, o en el pago de daños y perjuicios.

Cuando el daño se cause a las personas y produzca la muerte, incapacidad total o permanente, parcial permanente, total temporal o parcial temporal, el grado de la reparación se determinará atendiendo a lo dispuesto por la Ley Federal del Trabajo. Para calcular la indemnización que corresponda se tomará como base el cuádruplo del valor diario de la Unidad de Medida y Actualización y se extenderá al número de días que para cada una de las incapacidades mencionadas señala la Ley Federal del Trabajo. En caso de muerte la indemnización corresponderá a los herederos de la víctima.

Los créditos por indemnización cuando la víctima fuere un asalariado son intransferibles y se cubrirán preferentemente en una sola exhibición, salvo convenio entre las partes.

Las anteriores disposiciones se observarán en el caso del artículo 2561 de este Código.

**Artículo 1821**.- Por daño moral se entiende la afectación que una persona sufre en sus sentimientos, afectos, creencias, decoro, honor, reputación, vida privada, configuración y aspectos físicos, o bien en la consideración que de sí misma tienen los demás. Se presumirá que hubo daño moral cuando se vulnere o menoscabe ilegítimamente la libertad o la integridad física o psíquica de las personas.

Cuando un hecho u omisión ilícitos produzcan un daño moral, el responsable del mismo tendrá la obligación de repararlo mediante una indemnización en dinero, con independencia de que se haya causado daño material, tanto en responsabilidad contractual, como extracontractual. Igual obligación de reparar el daño moral tendrá quien incurra en responsabilidad objetiva conforme al artículo 1818, así como el Estado, los Municipios y sus servidores públicos conforme al artículo 1834.

La acción de reparación no es transmisible a terceros por acto entre vivos y sólo pasa a los herederos de la víctima cuando ésta haya intentado la acción en vida.

El monto de la indemnización lo determinará el Juez tomando en cuenta los derechos lesionados, el grado de responsabilidad, la situación económica del responsable y de la víctima, así como las demás circunstancias del caso.

Cuando el daño moral haya afectado a la víctima en su decoro, honor, reputación o consideración, el Juez ordenará, a petición de ésta y con cargo al responsable, la publicación de un extracto de la sentencia que refleje adecuadamente la naturaleza y alcance de la misma, a través de los medios informativos que considere convenientes. En los casos en que el daño derive de un acto que haya tenido difusión en los medios informativos, el Juez ordenará que los mismos den publicidad al extracto de la sentencia, con la misma relevancia que hubiere tenido la difusión original.

**Artículo 1830**.- Los patrones y los dueños de establecimientos mercantiles están obligados a responder de los daños y perjuicios causados por sus obreros o dependientes en el ejercicio de sus funciones. Esta responsabilidad cesa si demuestran que en la comisión del daño no se les puede imputar ninguna culpa o negligencia.

**Artículo 1831**.- Los jefes de casa o los dueños de hoteles o casas de hospedaje están obligados a responder de los daños y perjuicios causados por sus sirvientes en el ejercicio de su encargo.

**Artículo 1838**.- Igualmente, responderán los propietarios de los daños causados:

I.- Por la explosión de máquinas o por la inflamación de substancias explosivas;

II.- Por el humo o gases, olores, radiaciones o vibraciones que sean nocivos a las personas o propiedades;

III.- Por la caída de sus árboles, cuando no sea ocasionada por fuerza mayor;

IV.- Por las emanaciones de cloacas o depósitos de materias infectantes;

V.- Por los depósitos de agua que humedezcan la pared del vecino o derramen sobre la propiedad de éste;

VI.- Por el peso o movimiento de las máquinas, por las aglomeraciones de materias o animales nocivos a la salud; y

VII.- Por cualquier causa que sin derecho origine algún daño.

Tratándose de cosas muebles, cuya utilización se haga por un poseedor derivado, a título de usufructo, uso, arrendamiento, comodato, depósito, mandato, prenda y otro título análogo, será dicho poseedor el que responda de los daños causados por los citados bienes, siempre y cuando no haya culpa o negligencia del propietario o poseedor originario, en cuyo caso, éste será el responsable.

**Artículo 1840**.- La acción para exigir la reparación de los daños causados, en los términos del presente capítulo, prescribe en dos años, contados a partir del día en que se haya causado el daño.

# CÓDIGO DE PROCEDIMIENTOS CIVILES PARA EL ESTADO DE BAJA CALIFORNIA SUR

**Ley publicada en el Boletín Oficial del Gobierno del Estado de Baja California Sur el 23 de Mayo de 1997**

**TEXTO VIGENTE**
**Última reforma publicada BOGE 30-04-2025**

**Artículo 151.** Es juez competente aquel al que los litigantes se hubieren sometido expresa o tácitamente, cuando se trate del fuero renunciable.

**Artículo 152.** Hay sumisión expresa cuando los interesados renuncian clara y terminantemente el fuero que la ley les concede y designan con toda precisión el juez a quien se someten.

**Artículo 153.** Se entienden sometidos tácitamente:

I. El demandante, por el hecho de ocurrir al juez en turno entablando su demanda;

II. El demandado, por contestar la demanda o por reconvenir al actor;

III. El que habiendo promovido una competencia se desista de ella, y

IV. El tercer opositor y el que por cualquier motivo viniere al juicio.

**Artículo 156.** Es juez competente:

I. El del lugar que el deudor haya designado para ser requerido judicialmente de pago;

II. El del lugar señalado en el contrato para el cumplimiento de la obligación. Tanto en este caso como en el anterior, surte el fuero no sólo para la ejecución o cumplimiento del contrato, sino para la rescisión o nulidad;

III. El de la ubicación del bien, si se ejercita una acción real sobre bienes inmuebles. Lo mismo se observará respecto a las cuestiones derivadas del contrato de arrendamiento de inmuebles. Cuando estuvieren comprendidos en dos o más partidos, será a prevención;

IV. El del domicilio del demandado, si se trata del ejercicio de una acción sobre bienes muebles, o de acciones personales o del estado civil.

Cuando sean varios los demandados y tuvieren diversos domicilios será competente el juez del domicilio que elija el actor;

…

Case: 1:26-cv-08888 Document #: 25-1 Filed: 10/14/26 Page 34 of 46 PageID #:133



# LEY ORGÁNICA DEL PODER JUDICIAL DEL ESTADO DE BAJA CALIFORNIA SUR

**Ley publicada en el Boletín Oficial del Gobierno del Estado de Baja California Sur el 31 de diciembre de 2016**

**TEXTO VIGENTE**

**Última reforma publicada BOGE 21-11-2025**

**Artículo 3.-** El desempeño de la función jurisdiccional corresponde a:

I. El Tribunal Superior de Justicia;

II. Las y los Jueces de Primera Instancia;

III. Las y los Jueces de Control;

IV. El Tribunal de Enjuiciamiento;

V. Las y los Jueces de Control, el Tribunal Unitario de Enjuiciamiento y la o el Juez de Ejecución, Especializados en el Sistema Integral de Justicia Penal Adolescentes;

VI. Las y los Jueces de Ejecución Penal;

VII. Las y los Jueces Especializados en Violencia contra las Mujeres;

VIII. Las y los Jueces de los Tribunales Laborales;

IX. Las y los Jueces Menores;

X. Las y los Jueces de Paz;

XI. Las y los Árbitros; y

XII. Las y los demás funcionarios y auxiliares de la administración de Justicia.

**Artículo 6.-** La jurisdicción territorial del Poder Judicial comprende todo el Estado de Baja California Sur.

Para los efectos de esta Ley, el Estado de Baja California Sur se divide en los Partidos Judiciales siguientes:

I. El de Mulegé, con la extensión territorial del Municipio del mismo nombre;

II. El de Loreto, con la extensión territorial del Municipio del mismo nombre;

III. El de Comondú, con la extensión territorial del Municipio del mismo nombre;

IV. El de La Paz, con extensión la territorial del Municipio del mismo nombre; y

V. El de Los Cabos, con la extensión territorial del Municipio del mismo nombre.

**Artículo 43.-** En materia Civil los Jueces de Primera Instancia conocerán:

I. De los asuntos de jurisdicción voluntaria;

II. De los procesos que versen sobre la propiedad y demás derechos reales;

III. De los demás asuntos de jurisdicción contenciosa, común o concurrente; así como de lo relativo a concursos, suspensiones de pagos y quiebras;

....

RAFAEL ROJINA VILLEGAS

EX CATEDRÁTICO DE DERECHO CIVIL EN LA UNAM, EX MINISTRO DE LA SUPREMA CORTE DE JUSTICIA

# COMPENDIO DE DERECHO CIVIL

## III

## TEORÍA GENERAL DE LAS OBLIGACIONES

TRIGÉSIMA EDICIÓN

CONCORDADA CON LA LEGISLACIÓN VIGENTE
POR LA LIC. ADRIANA ROJINA GARCÍA

EDITORIAL PORRÚA
AV. REPÚBLICA ARGENTINA, 15
MÉXICO, 2012

Case: 1:26-cv-08888 Document #: 25-1 Filed: 10/14/26 Page 37 of 46 PageID #:136



Amparo civil directo 7943/50.—Mijangos Librado y coags.—12 de enero de 1954.—Cinco votos.—La publicación no menciona el nombre del ponente.

Amparo directo 5889/57.—Manuel Melo del Río y otros.—12 de septiembre de 1958.—Cinco votos.—Ponente: Rafael Matos Escobedo.

Amparo directo 2190/57.—Isaac Landau Eidels.—12 de febrero de 1960.—Cinco votos.—Ponente: Mariano Ramírez Vázquez.

Amparo directo 7233/58.—Arturo Gómez Núñez.—3 de abril de 1961.—Unanimidad de cuatro votos.—Ponente: Alberto R. Vela.

Apéndice 1917-1995, Tomo IV, Primera Parte, página 173, Tercera Sala, tesis 253.

Sexta Época. Instancia: Tercera Sala. Fuente: Apéndice 2000. Tomo: Tomo IV, Civil, Jurisprudencia SCJN. Tesis: 243. Página: 200.

## CAPITULO III

## DE LA RESPONSABILIDAD OBJETIVA

1.—*Concepto.*—La responsabilidad objetiva o teoría del riesgo creado, es una fuente de obligaciones reconocida en algunos códigos de este siglo, por virtud de la cual, aquel que hace uso de cosas peligrosas, debe reparar los daños que cause, *aun cuando haya procedido lícitamente.* Este principio que existe en el Código ruso y que ha inspirado a nuestro artículo 1913 del Código Civil, encierra una fuente de obligaciones distinta de la responsabilidad por culpa o dolo. En el caso de la responsabilidad objetiva, se parte de la hipótesis de que la fuente de obligaciones es el *uso lícito de cosas peligrosas*, que por el hecho de causar un daño, obligan al que se sirve de ellas, que puede ser el propietario, el usufructuario, el arrendatario, o el usuario en general, a reparar el daño causado.

"Es casi imposible hacer una lista completa de las cosas peligrosas por sí mismas, lista que, por otra parte, frecuentemente tendría que variarse, pues nuevos descubrimientos científicos harían ingresar a la lista otras cosas o excluirían de ellas las que habrán dejado de ser peligrosas.

No se debe dar una interpretación restrictiva al artículo 1913 y pretender que solamente son peligrosas las cosas que expresamente menciona". (Francisco H. Ruiz, Breves Consideraciones Sobre la Responsabilidad Civil, Formuladas con Motivo de una Ejecutoria de la Suprema Corte de Justicia de la Nación, trabajo publicado en la Revista de la Escuela Nacional de Jurisprudencia, tomo VIII, abril-junio de 1946, núm. 30, págs. 467 y 468).

2.—*Elementos de la responsabilidad objetiva.*—Los elementos que podemos precisar en esta nueva fuente, producto principalmente del maquinismo y de la industria moderna, son los siguientes:

1°—El uso de cosas peligrosas,
2°—La existencia de un daño de carácter patrimonial,
3°—La relación de causa a efecto entre el hecho y el daño.

Tomando en cuenta que exclusivamente se parte de esta relación causal entre el hecho, o sea el uso de cosas peligrosas, y el daño producido, se le ha llamado teoría de la responsabilidad objetiva, para distinguirla de la responsabilidad subjetiva, en la cual se parte de un elemento estrictamente personal, o sea, la negligencia, la culpa o el dolo. En cambio, en la teoría de la responsabilidad objetiva, se prescinde de este elemento internó o subjetivo, para tomar en cuenta sólo un conjunto de datos de carácter objetivo, consistentes en el uso de cosas peligrosas, en el hecho de que causan un daño de carácter patrimonial y en la relación de causa a efecto entre el hecho y el daño. Analizaremos los tres elementos mencionados para precisar su alcance.

"A la teoría de la responsabilidad objetiva se le ha dado el nombre de teoría de la responsabilidad por el riesgo creado (que fue propuesto con éxito por Ripert), cuando reviste la modalidad de que el daño se origine por el ejercicio de una actividad peligrosa o por el empleo de cosas peligrosas que han hecho nacer un riesgo para los demás. Conforme a esta teoría toda actividad que crea un riesgo para los demás hace responsable al agente de los daños que cause, sin necesidad de que se investigue si hubo o no culpa de su parte. El hombre que por su actividad puede procurarse algún provecho, es justo que repare el daño que ocasione esa actividad. Ubi emolumentum ibi onus, decían los romanos. A los provechos deben corresponder las pérdidas. La responsabilidad por el riesgo creado es la contrapartida del provecho que produce el empleo de cosas peligrosas. El empleo de estas cosas por sí mismo, no puede constituir una culpa, nada hay de reprochable en él; pero siempre crea un riesgo que, cuando origina daños sirve de fundamento a la responsabilidad.

La responsabilidad por el riesgo creado tiene un doble fundamento: el económico, conforme al principio que las ganancias y las pérdidas deben corresponderse; el social, por aplicación del principio de solidaridad en el reparto de las pérdidas.

En la teoría del riesgo creado se exige para que nazca la responsabilidad: 1° El uso de una cosa peligrosa o el ejercicio de actividades reputadas por la ley como peligrosas. 2° La realización de un daño. 3° Una relación de causa a efecto entre la cosa o actividad peligrosas y el daño causado. No se toma en cuenta en esta teoría el elemento subjetivo de la culpa imputable al agente". (Francisco H. Ruiz, Revista citada, págs. 465 y 466).



3.—*Cosas peligrosa*
los mecanismos, apar
riesgo para la colectiv
*naturaleza funcional de*
ción, sino la cosa fu
cuando funciona, cua
Un cable de energía
decir, cuando funcio
en condiciones de fu
por sí mismas y esto
que por factores inde
el clima, por el calor a
exceptuando este cas
tos, etc., son peligro

Enneccerus, ob.

No obstante, el
peligrosas: por sí m
eléctrica que condu
causa semejante. Di
jurisprudencia fran
mismas, llegándose
por sí mismas; qu
hacerlas funcionar,
eléctrica, de tal m
peligrosas por sí mi
para que en verdad
1913 en el sentido
cumpla una funció
grosidad de la cos
que están llamada
cumplir con un fin,
que originen un ri
culos por la veloci
y cuanto conduzc

Planiol *y* Ripert

"El concepto
entre cosa peligros
por sí mismas, qu
y cesa cuando dej

# POLITICAL CONSTITUTION OF THE UNITED MEXICAN STATES

**Constitution published in the Official Daily of the Federation on February 5, 1917**

**CURRENT TEXT**
**Last amendment publshed DOF 10-07-2026**

**Article 133**. This Constitution, the laws enacted by Congress pursuant thereto and all treaties that are in accordance with it, made, or which shall be made, by the President of the Republic with the Senate's approval, shall be the Supreme Law of the Union. The judges in every state shall be bound by said Constitution, laws and treaties, notwithstanding any provisions to the contrary that may be found in the Constitutions or laws of the states.

tabbies®
EXHIBIT
3

# FEDERAL LABOR LAW

**New Law published in the Official Daily of the Federation on the 1st of April 1970**

**CURRENT TEXT**
**Last amendment published 05-14-2026**

**Article 487**. Employees who suffer a work-related risk shall have the right to:

I. Medical and surgical assistance;

II. Rehabilitation;

III. Hospitalization, when required;

IV. Medications and curative materials;

V. The necessary prosthetic and orthopedic devices; and

VI. The indemnification specified in this Title.

# CIVIL CODE
# FOR THE FREE AND SOVEREIGN STATE OF BAJA CALIFORNIA SUR

**Law published in the Official Bulletin of the Government of the State of Baja Californi Sur on July 19, 1996**

**CURRENT TEXT**
**Last amendment publshed BOGE 09-08-2026**

**Article 1**.- The provisions of this Code shall govern in the State of Baja California Sur in civil matters and in a supplementary manner in all state legislation.

**Article 12**.- The laws of the State of Baja California Sur, including those that refer to civil status and the capacity of persons, shall apply to all inhabitants of the State, whether they are nationals or foreigners, domiciled in it or transients; but when dealing with foreigners, the provisions of federal laws on the subject will be considered.

**Article 1173**.- Prescription is interrupted:

I. If the possessor is deprived of possession of the property or of the enjoyment of the right for more than one year;

II. By a lawsuit or any other type of judicial demand served upon the possessor or the debtor, as the case may be.

Prescription shall not be considered interrupted by a judicial demand if the plaintiff withdraws the action or if the claim is dismissed; ....

**Article 1735**.- An illicit act is one that is contrary to laws of public order or good customs.

**Article 1815**.- He who acting illicitly or against good customs causes damage to another is obligated to repair it, unless he can prove that the damage was caused as a result of the inexcusable fault or negligence of the victim.

**Article 1818**.- If a person makes use of mechanisms, instruments, apparatuses or substances which by themselves are dangerous, due to the speed they develop, their explosive or flammable nature, by the electrical current they produce or similar causes, he is obligated to respond for the damage they cause, even if he is not using them illicitly, unless he can prove that the damage was caused by the inexcusable fault or negligence of the victim.

**Article 1820**.- Compensation for damages shall consist, at the election of the injured party, of restoration of the prior situation, when that is possible, or in the payment of damages and losses.

If damage is caused to persons and results in death, total or permanent disability, partial permanent disability, total temporary disability or partial temporary disability, the amount of compensation shall be determined in accordance with the provisions of the Federal Labor Law. In order to calculate the corresponding indemnification, quadruple the daily value of the Unit of Measure and Actualization shall be taken as the base, and shall extend for the number of days provided for each of the mentioned disabilities in the Federal Labor Law. In case of death, the indemnification is owed to the heirs of the victim.

If the injured party was a wage-earner, the compensation is non-transferable and preferably shall be paid in one lump sum, absent agreement between the parties.

The prior provisions shall be observed in the case of Article 2561 of this Code.

**Article 1821**.- Moral injury means the impact that a person suffers in his feelings, affections, beliefs, decorum, honor, reputation, privacy, image and physical appearance, or how he is perceived in the opinion of others. Moral injury shall be presumed when the freedom or physical or psychological integrity of persons is unlawfully violated or restricted.

If an illicit act or omission causes a moral injury, the person liable for the same shall have the obligation to repair it by means of an indemnification paid in money, independent of whether any material injury has been caused, both for contractual liability as well as extracontractual liability. He who incurs objective liability in accordance with Article 1818, as well as the State, the Municipalities and their public servants in accordance with Article 1834, shall have the same obligation to repair the moral injury.

The action for reparation is not transferable to third parties by inter vivos agreement and only passes to heirs of the victim when the action was brought while the victim was alive.

The judge shall determine the amount of the indemnification taking into account the rights violated, the degree of liability, the economic situations of the liable party and of the victim, and other circumstances of the case.

....

**Article 1830**.- Employers and owners of commercial establishments are obligated to respond for damages and losses caused by their workers or dependents in the exercise of their functions. This liability ceases if they prove that in the commission of the damage no fault or negligence can be imputed to them.

**Article 1831**.- Heads of households or owners of hotels or lodging houses are obligated to respond for damages caused by their servants in the performance of their duties.

**Article 1838**.- Likewise, owners shall be liable for damages caused:

I.- By the explosion of machinery or the ignition of explosive substances;

II.- By smoke or gases, odors, radiation or vibrations that are harmful to persons or property;

III.- By the falling of their trees, when not caused by force majeure;

IV.- By emanations from sewers or deposits of infectious materials;

V.- By water deposits that cause dampness in a neighbor's wall or overflow onto their property;

VI.- By the weight or movement of machinery, or by accumulations of materials or animals harmful to health; and

VII.- By any cause that unlawfully gives rise to damage.

**Article 1840**.- The action to demand reparation of the damages caused in the terms of the present Chapter prescribes after two years, counting from the day on which the damage was caused.

## CODE OF CIVIL PROCEDURE
## OF THE STATE OF BAJA CALIFORNIA SUR

**Law published in the Official Bulletin of the Government of the State of Baja Californi Sur on May 23, 1997**

**CURRENT TEXT**
**Last amendment publshed BOGE 04-30-2025**

**Article 151.-** A judge to whom the litigants have expressly or tacitly submitted has jurisdiction, when dealing with a renounceable forum.

**Article 152.-** There is express submission when the interested parties clearly and unequivocally renounce the forum which the law grants them and they designate with all precision the judge to whom they submit.

**Article 153**.- Tacit submission means:

I. The plaintiff, by the act of filing its complaint with the court;

II. The defendant, by answering the complaint or counterclaiming against the plaintiff; ....

**Article 156**.- The Judge with jurisdiction is:

I. That of the place that the debtor has designated to be judicially required to make payment;

II. That of the place specified in the contract for the performance of the obligation. In both this case and the preceding one, jurisdiction applies not only to the execution or performance of the contract but also to its rescission or annulment;

III. That of the location of the property, if a real action concerning real property is brought. The same shall be observed with respect to questions arising from a real estate lease agreement. When the property lies within two or more judicial districts, jurisdiction shall be determined by which judge first takes cognizance of the matter;

IV. That of the defendant's domicile, in the case of an action regarding personal property, or personal actions, or actions concerning civil status.

When there are several defendants and they have different domiciles, the Judge of the domicile chosen by the plaintiff will have jurisdiction;

....

# ORGANIC LAW OF THE JUDICIARY OF THE STATE OF BAJA CALIFORNIA SUR

**Law published in the Official Bulletin of the Government of the State of Baja Californi Sur on December 31, 2016**

**CURRENT TEXT**
**Last amendment publshed BOGE 11-12-2025**

**Article 3.**- The exercise of the jurisdictional function corresponds to:

I. The Superior Court of Justice;

II. Judges of First Instance;

III. Control Judges;

IV. The Judicial Process Court;

V. Control Judges, the Single-Judge Process Court, and the Judgment Execution Judge, specialized in the Comprehensive Criminal Justice System for Adolescents;

VI. Criminal Enforcement Judges;

VII. Judges Specialized in Violence against Women;

VIII. Labor Court Judges;

IX. Small Claims Court Judges;

X. Justices of the Peace;

XI. Arbitrators; and

XII. Other officials and auxiliary personnel of the administration of Justice.

**Article 6**.- The territorial jurisdiction of the Judiciary encompasses the entire State of Baja California Sur.

For the purposes of this Law, the State of Baja California Sur is divided into the following Judicial Districts:

I. That of Mulegé, comprising the territory of the municipality of the same name;

II. That of Loreto, comprising the territory of the municipality of the same name;

III. That of Comondú, comprising the territory of the municipality of the same name;

IV. That of La Paz, comprising the territory of the municipality of the same name; and

V. That of Los Cabos, comprising the territory of the municipality of the same name.

**Article 43**.- In Civil matters, the Judges of First Instance shall have jurisdiction over:

I. Voluntary jurisdiction proceedings;

II. Proceedings concerning real property and and other in rem rights;

III. Other matters involving contentious jurisdiction, whether ordinary or concurrent; as well as that relating to insolvency proceedings, suspensions of payments, and bankruptcies; ….

**RAFAEL ROJINA VILLEGAS**
FORMER PROFESSOR OF CIVIL LAW AT THE UNAM, FORMER JUSTICE OF THE SUPREME COURT OF JUSTICE

# COMPENDIUM
# OF
# CIVIL LAW
# III

**GENERAL THEORY OF OBLIGATIONS**

THIRTIETH EDITION

UPDATED TO THE CURRENT LEGISLATION
BY LIC. ADRIANA ROJINA GARCIA

PORRÚA PUBLISHING COMPANY
REPÚBLICA ARGENTINA AVE. 15
MEXICO, 2012

2. – *Elements of objective liability.* – The elements that we can specify for this new source [of liability], product principally of mechanization and modern industry, are the following:

1st – The use of the dangerous things,
2nd – The existence of a damage of patrimonial character,
3rd – The relation of cause and effect between the act and the damage.